In re HUDSON OIL COMPANY, INC., et al., Debtors.

Bob STALLINGS, Plaintiff,

v.

Walter C. KELLOGG, Defendant.

Bankruptcy No. 84–20002.
Adv. No. 85–0012.
Civ. A. No. 85–2474.

United States District Court, D. Kansas.

Dec. 30, 1986.

James D. Howell, Jr., Overland Park, Kan., for plaintiff.

F. Stannard Lentz, Mission, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This is an appeal of an order entered by the United States Bankruptcy Court for the District of Kansas, denying plaintiff's Motion to Remand. Because section 1452(b) of Title 28, United States Code, provides that a decision to deny remand is not appealable, the sole issue on appeal is whether this court, and by reference the bankruptcy court, has jurisdiction over plaintiff's cause of action. We conclude that jurisdiction is proper in this court, though on a different basis than that on which the bankruptcy court relied.

### I. *Facts.*

Plaintiff Bob Stallings was formerly the Vice-President of the Marketing Division of the Hudson Oil Company ["Hudson Oil"], which is being reorganized under Chapter 11 of the Bankruptcy Code. Defendant Walter C. Kellogg is the trustee in bankruptcy for Hudson Oil and the other debtors in the instant bankruptcy case. On February 15, 1985, plaintiff filed a petition in the District Court of Johnson County,

Kansas, seeking damages against defendant personally for an alleged wrongful termination or retaliatory discharge of plaintiff. In his petition, plaintiff alleges that defendant wilfully and deliberately acted outside the scope of his authority as trustee by firing plaintiff after plaintiff refused to reimburse the debtors' estate for a cash and inventory shortage. The shortage occurred at a Hudson Oil Company Station managed by plaintiff's son. Plaintiff insists that his lawsuit is directed solely against defendant in his personal capacity, and not as trustee, and that the debtors' estate will thus not be affected.

On March 8, 1985, pursuant to 28 U.S.C. § 1452 and Local Rule B–103, defendant removed the action to the United States Bankruptcy Court for the District of Kansas. On March 25, 1985, plaintiff filed a motion to remand the adversary proceeding to state court. Judge Franklin, on September 11, 1985, denied plaintiff's motion, holding that plaintiff's claim is a core proceeding under 28 U.S.C. § 157(a)(2) (presumably § 157(b)(2)) and that denying remand was in the best interest of the debtors' estate. Implicitly, Judge Franklin also held that the court has jurisdiction over plaintiff's claim under 28 U.S.C. § 1334. Plaintiff timely filed a notice of appeal of Judge Franklin's order and we subsequently ruled that plaintiff could appeal the judge's determination that this court has jurisdiction.

## II. *Alleged Defects in Removal Procedure.*

Plaintiff essentially complains of two procedural defects in defendant's application for removal of this matter from state court: (1) defendant, in violation of Bankruptcy Rule 9027(a)(1), did not verify the removal petition; and (2) defendant did not post a removal bond as required by 28 U.S.C. § 1446(d). Neither of these complaints has merit.

■ First, although it is true that defendant did not initially verify his removal petition, he did eventually verify it. The law is well-settled that irregularities or defects in the removal procedure, if cured, "do not defeat the jurisdiction of the federal court." C. Wright, *The Law of Federal Courts* § 40, at 232; 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3739 (1985).

■ Second, as the bankruptcy court properly held, a trustee is not required to file a bond with the application for removal. Bankruptcy Rule 9027(b). Although plaintiff is suing defendant only in defendant's personal capacity, defendant is defending the action by asserting, among other things, that he acted properly and within the scope of his authority as a trustee. Therefore, Rule 9027(b) is fully applicable and no bond was required.

## III. *Jurisdictional Issue.*

■ In 28 U.S.C. § 1334, Congress has granted United States District Courts jurisdiction over bankruptcy cases and proceedings. Section 1334(a) provides that the district courts "shall have original and exclusive jurisdiction of all cases under title 11." A "case under title 11" is the case begun by the filing of the bankruptcy and "the case upon which all of the proceedings which follow the filing of a petition are predicated." 1 *Collier on Bankruptcy* ¶ 3.01, at 3–20 (15th ed. 1986). Because plaintiff's action obviously does not fall within this definition, jurisdiction may not be grounded in section 1334(a).

Jurisdiction exists, therefore, if at all, under section 1334(b). That subsection provides that "the district courts shall have original but not exclusive jurisdiction of civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Although this subsection lists three types of proceedings, two of those types—proceedings "arising under title 11" and proceedings "arising in cases under title 11"—fall under a single umbrella category labeled "core proceedings." *See* 28 U.S.C. § 157(b)(1). Thus, we have jurisdiction under section 1334(b) if plaintiff's claim is either a core proceeding or a "related" proceeding.

As noted above, the bankruptcy court held that this action is a core proceeding and, therefore, that jurisdiction exists under section 1334(b). Defendant argues that Judge Franklin's decision was correct, but that even if it was not, this is at least a "related" proceeding and that jurisdiction is still proper under that section. Plaintiff maintains, however, that his claim is neither type of proceeding and that, consequently, the court has no jurisdiction over his claim. He thus requests that the court overrule Judge Franklin and order that the case be remanded to state court as having been improperly removed. To determine whether plaintiff or defendant is correct, the court must first examine the constitutional parameters, and statutory provisions, that form the basis of, and that establish the importance of, the distinction between core proceedings and related matters.

In 1978, Congress enacted the Bankruptcy Reform Act of 1978 ["the 1978 Act"]. Under that Act, the bankruptcy courts were authorized to exercise "all of the jurisdiction conferred ... on the district courts." 28 U.S.C. § 1471(c) (now repealed). Hence, the bankruptcy judges, who were not Article III judges, were allowed to issue final orders on a wide variety of claims, even those claims that were essentially state law claims but that were in some sense "related to" the bankruptcy proceedings. Their factual findings could be reversed only if "clearly erroneous." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 54–55 n. 5, 85, 102 S.Ct. 2858, 2862–63 n. 5, 2878, 73 L.Ed.2d 598 (1982).

In *Marathon,* the Supreme Court considered the constitutionality of the 1978 Act's jurisdictional scheme. In striking down that scheme, the Court was particularly concerned with what it perceived to be "an unwarranted encroachment" by Congress upon the domain of other branches and bodies of government:

> Many of the rights subject to adjudication by the [1978] Act's bankruptcy courts ... are not of Congress' creation.

Indeed, the cases before us, which center upon appellant Northern's claim for damages for breach of contract and misrepresentation, involve a right created by *state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court. Accordingly, Congress' authority to control the manner in which that right is adjudicated, through assignment of historically judicial functions to a non-Art. III "adjunct," plainly must be deemed to be at a minimum. *Id.* at 84, 102 S.Ct. at 2878 (emphasis in original). The Court thus concluded that a " 'traditional' state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must ... be heard by an 'Art. III court' if it is to be heard by any court or agency of the United States." *Id.* at 92, 102 S.Ct. at 2882 (Burger, C.J., dissenting).

Two years after the *Marathon* decision, Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 ["the 1984 Act"]. Under the 1984 Act, the jurisdiction of the district courts is not automatically transferred to the bankruptcy courts. Rather, "[e]ach district court *may* provide that [bankruptcy cases, cases arising in a bankruptcy matter, and related proceedings] shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a) (emphasis added). Moreover, to address the constitutional problem that arises if the non-Art. III bankruptcy court hears and decides state law claims, section 157 divides the types of cases that may be referred to the bankruptcy court into two categories and grants that court a different level of authority for each category. Those two categories are "core proceedings" and non-core "related" matters. *See* 28 U.S.C. § 157(b)(1) and (c)(1).

Core proceedings are those matters that "aris[e] under title 11" or that "aris[e] in a case under title 11." 28 U.S.C. § 157(b)(1) (borrowing language from 28 U.S.C. § 1334(b)). That is, they are the proceedings that fall within the core area of bank-

ruptcy power. *In Re Branding Iron*, 798 F.2d at 399 n. 3. Examples include: orders to turn over property, 28 U.S.C. § 157(b)(2)(E); proceedings to determine, avoid, or recover preferences, *id.* at (b)(2)(F); motion to terminate, annul, or modify the automatic stay, *id.* at (b)(2)(G); and confirmations of plans, *id.* at (b)(2)(L). Although the phrase is not precisely defined in the statute, a leading treatise on bankruptcy refers to such proceedings as matters that are essentially bankruptcy concerns and that "could not have been brought absent bankruptcy...." 1 *Collier on Bankruptcy* ¶ 3.01, at 3–35 (15th ed. 1986).

■ Hence, by definition—and by design—core proceedings exclude claims that are essentially state common law actions. Consequently, in core proceedings, the bankruptcy judge "may hear and determine" all issues or disputes and may enter "appropriate orders and judgments," *id.* at § 157(b)(1), without running afoul of the *Marathon* holding. The losing party may appeal such orders to the district court, but the district court must act as an appellate court and may thus overturn the bankruptcy court's findings only if they are clearly erroneous. 28 U.S.C. §§ 157(b)(1); 158; Bankruptcy Rule 8013. *See also In Re Branding Iron Motel, Inc.*, 798 F.2d 396, 399 (10th Cir.1986).

■ Non-core "related" proceedings, on the other hand, are those matters that are traditional state law actions, not made subject to a federal rule of decision, but that are related, though only peripherally, to a pending bankruptcy case. *See In Re Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1285 (10th Cir.1984). That is, they are the types of proceedings with which the *Marathon* court was concerned. Accordingly, the bankruptcy court cannot constitutionally exercise the same degree of authority over related proceedings as it does over core proceedings. Section 157(a) thus provides that a bankruptcy court may hear related matters, but that, if it does, it may only "submit *proposed* findings of fact and conclusions of law to the district

court...." *Id.* at § 157(c)(1) (emphasis added). Moreover, unlike in core proceedings, the district court reviews de novo the bankruptcy court's findings of fact. *Id.* *See also In Re Branding Iron*, 798 F.2d at 399 n. 3; *In Re Reid*, 757 F.2d 230, 233–34 n. 5 (10th Cir.1985).

### A. Is This a Core Proceeding?

As noted above, to support his argument that this court has jurisdiction under section 1334(b), defendant Kellogg first argues that Judge Franklin properly held that this is a core proceeding under section 157(b)(2). With all due respect to Judge Franklin, however, we conclude that this is not a core proceeding.

Plaintiff's claim does not pose the type of issues or concerns typically present in a "core" bankruptcy matter. It does not, for example, require the bankruptcy court to decide whether to confirm a plan, to accept an objection to a discharge, to terminate a stay, or to rule on other matters that Congress may validly, within its power over bankruptcy cases, grant to bankruptcy courts the authority to decide. *See* 28 U.S.C. § 157(b)(2).

Defendant argues, however, that plaintiff's claim is a core proceeding within the meaning of sections 157(b)(2)(A), (B), or (O). Those sections provide:

> (b)(2) Core Proceedings include, but are not limited to—
> (A) matters concerning the administration of the estate;
> (B) allowance or disallowance of claims against the estate ...;
> (O) other proceedings affecting the liquidation of the assets of the estate....

Defendant's position is that, although plaintiff maintains that he is suing defendant only in defendant's personal, and not official, capacity, the estate may be liable if the ultimate fact finder determines that defendant acted wrongfully, but within the scope of his duties as trustee. Thus, defendant insists, plaintiff's claim is in reality a claim against the estate and, therefore, within the terms of section 157(b)(2)(B).

Moreover, he maintains, because the claim involves an examination of whether defendant acted within his authority as trustee, it is a claim that is integrally intertwined with the administration of the estate. *See* 28 U.S.C. § 157(b)(2)(A).

■ We need not argue, though we could, with defendant's assertion that plaintiff's claim falls within a broad, literal interpretation of subsections 157(b)(2)(A), (B), or (O).[1] It shall suffice to demonstrate that such a broad reading would, in this case, lead to an unconstitutional result.

Plaintiff's suit is for retaliatory discharge, a state common-law cause of action. The rights that plaintiff alleges were violated and that he seeks to have vindicated thus spring from state law; they were not created by Congress. Accordingly, as the Court held in *Marathon*, the bankruptcy court cannot constitutionally be given the authority to finally decide plaintiff's claim (which of course it would have the authority to do if this were classified as a core proceeding). Because Congress drew the distinction between core and related proceedings to avoid this constitutional problem, it could not have intended to classify plaintiff's claim as a core matter, thereby destroying the efficacy of the distinction. *See In Re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir.1986) (provisions of section 157(b)(2) should be construed narrowly to avoid constitutional problems); *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 46 B.R. 464, 466 (D.Mass. 1985).

Nonetheless, defendant cites section 157(b)(3) in an apparent attempt to limit the scope of the *Marathon* decision. That section provides: "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law." Thus, defendant argues that state law claims may be core proceedings. To support that proposition, he cites cases in which courts have categorized breach of contract or other state claims brought by debtors as core proceedings under section 157(b)(2)(E) (proceedings to turn over property of the estate). *See, e.g., In Re Harry C. Partridge, Jr. & Sons, Inc.*, 48 B.R. 1006 (Bankr.E.D. N.Y.1985); *In Re Baldwin-United Corp.*, 48 B.R. 49 (Bankr.Ohio 1985).

■ Defendant's reliance on section 157(b)(3) and the cases cited above, however, is misplaced. Congress clearly does not have the power to limit the *Marathon* decision. Nor is there any evidence or reason to believe that that was its intent. Rather, as stated in *Collier on Bankruptcy*, the purpose of section 157(b)(3) was to make it clear that *Marathon* does not prevent bankruptcy courts from deciding core bankruptcy issues, even if those issues turn on resolution of state law.[2] That is, *Marathon* simply established that Congress cannot allow bankruptcy judges to decide state law *claims*, as opposed to state law questions. 1 *Collier* ¶ 3.01, at 3–44. Thus, section 157(b)(3) merely reminds courts that "the *source* of the cause of action, not the governing substantive

---

**1.** For example, plaintiff's claim is not, despite defendant's assertion to the contrary, a claim against the estate. Plaintiff has chosen to sue defendant *only* in defendant's *personal capacity.* Because the estate is liable only if defendant acted negligently *and* within the scope of his authority as trustee—in other words, in his official capacity—*Sherr v. Winkler*, 552 F.2d 1367 (10th Cir.1977), the estate faces no potential liability. It is true that defendant is raising as a defense that he acted at all times within the scope of his authority as trustee. But if the fact finder agrees that he acted as trustee, even though he may have acted negligently, the plaintiff will not be allowed to recover because he did not sue defendant in his official capacity.

Moreover, the principles of res judicata will bar plaintiff from reasserting his claim against defendant as trustee and thus against the estate.

**2.** Congress can, within its power over bankruptcy matters, grant to bankruptcy judges the authority to interpret state law in their resolution of bankruptcy questions. Thus, for example, the bankruptcy court may decide to avoid a preference under 11 U.S.C. § 547 or a fraudulent transfer under 11 U.S.C. § 548, even though the defenses contained in these sections are concerned with, *inter alia,* "when a transfer was perfected, which invariably involves a resort to state law...." 1 *Collier* ¶ 3.01, at 3–44.

law, is to be determinative." *Id.* (emphasis added).

Further, the very cases cited by defendant were criticized by *Collier* for having ignored the constitutional problems discussed by the Supreme Court. As the treatise notes:

> The problem with these cases is that, under their rationale, every action brought by a trustee or debtor in possession to recover money or property could conceivably be characterized as a turnover proceeding, effectively contradicting *Marathon.*

*Id.* at 3–38.

In short, plaintiff's claim presents the type of matter that gave the Supreme Court concern in *Marathon.* Defendant's citation of section 157(b)(3) and his arguments that the claim falls within the broad provisions of section 157(b)(2) does not alter that fact. Hence, because constitutional concerns preclude the bankruptcy court from finally deciding plaintiff's state law claim, we conclude that it is not a core proceeding.

### B. *Is This a Related Proceeding?*

Defendant's second argument is that jurisdiction exists because this is at least a related matter and, therefore, within the terms of section 1334(b). Plaintiff argues, however, that the ties between his claim and the bankruptcy case are too tenuous for it to fall within any of the jurisdictional language of that section. On this question, we agree with defendant.

■ Related matters are those non-core proceedings "that, in the absence of bankruptcy, could have been brought in a district court or state court." *In Re Colorado Energy Supply,* 728 F.2d at 1286. Moreover, the proceeding must be such that "the outcome of that proceeding could conceivably have [an] effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984) (citing *In Re Hall,* 30 B.R. 799, 802 (M.D.Tenn.1983)). We perceive two such possible effects.

■ First, although the estate will not be liable for an award of damages (and the claim is thus not a claim against the estate under section 157(b)(2)(B)), the estate may be liable for defendant's attorney's fees as an administrative expense. *See* 11 U.S.C. § 503. Second, and of even more importance, defendant is the trustee of the estate. His defense is that his actions were proper and that at all times he was acting within the scope of his authority as trustee. Thus, his handling of the estate will be a central issue in the resolution of this matter. Moreover, because his future conduct may be affected by the suit's outcome, the action may interfere with the administration of the estate. *Cf. In Re United Dep't Stores, Inc.,* 39 B.R. 54, 55–56 (Bankr.S.D. N.Y.1984) (citing *First State Bank v. Sand Springs State Bank,* 528 F.2d 350 (10th Cir.1976)). Hence, we conclude that the matter has a sufficient nexus to the bankruptcy proceedings to be a related matter. *See Weaver v. Gillen,* 49 B.R. 70 (W.D. N.Y.1985). As such, this court retains ultimate jurisdiction and, if the bankruptcy court is called upon to propose findings of fact, we shall review them de novo.

In sum, this court has jurisdiction over this related proceeding under section 1334(b). Accordingly, we shall affirm the ruling of the bankruptcy court, though on different grounds.

IT IS THEREFORE ORDERED that the ruling of the United States Bankruptcy Court for the District of Kansas, finding that jurisdiction over plaintiff's cause of action exists pursuant to 28 U.S.C. § 1334(b), is affirmed. Plaintiff's cause of action shall remain before the bankruptcy court, which shall hear it in accordance with this memorandum and order and 28 U.S.C. § 157(c)(1).