Linda LUCIANO, Plaintiff,

v.

Carmen J. MAGGIO, Individually and as Trustee in Bankruptcy for Capital Resources Corporation, Guy DiPietro, and James Ciliberti, Defendants.

No. CV 91–2184 (ADS).

United States District Court,
E.D. New York.

March 30, 1992.

Beigel, Sandler, Munves, Tanenhaus & Storch, New York City (Edward D. Tanenhaus, and Norman Trabulus, Mineola, N.Y., of counsel), for plaintiff.

Jaspan, Ginsberg, Ehrlich, Schlesinger, Silverman & Hoffman, Garden City, N.Y. (Alice Hollmuller, of counsel), for defendants.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

In this case, what would normally be a typical state court tort action, is complicat-

ed by the fact that both the plaintiff and the respective defendants have ties to Capital Resources Corporation—an entity now in the midst of Chapter 11 bankruptcy proceedings.

The defendants move, pursuant to 28 U.S.C. § 1412, to transfer venue of this matter to the United States District Court for the District of New Jersey, claiming that this action can be adjudicated as part of the pending New Jersey bankruptcy proceedings.

The plaintiff opposes the motion, stating that she has not asserted any claim against the bankrupt estate, that she is entitled to a jury trial of her claims against the defendants, and that transferring venue to the District of New Jersey is not appropriate in these circumstances.

For the reasons set forth below, the defendants' motion to transfer venue of this action to the District Court for the District of New Jersey is denied.

## I. BACKGROUND

### A. *The Parties*

At the time this action was commenced, the plaintiff, Linda Luciano ("Luciano" or "plaintiff"), was a resident of Bellmore, New York. From 1983 to 1991, the plaintiff was employed by Capital Resources, Corp. ("Capital"), initially as a bookkeeper and finally as Assistant Controller. During the course of the lawsuit, the Court was notified that Luciano was in the process of changing her residence from Huntington Station, New York, to Florida. Regardless of the change of residence, the plaintiff continues her opposition to the defendants' transfer motion.

The defendant Carmen J. Maggio ("Maggio") was appointed Trustee in Capital's bankruptcy proceeding on February 8, 1991. Maggio is sued in his individual as well as his Trustee capacity.

Guy DiPietro ("DiPietro") is the Vice-President of Capital, where he has been employed since July, 1987. According to DiPietro, he was directly responsible for the supervision of Luciano. DiPietro resides in New York.

James Ciliberti ("Ciliberti") is Director of the Real Estate Division of Capital Resources Corp. where he has been employed since December, 1989. Ciliberti is also a resident of New York.

### B. *Jurisdiction*

On May 18, 1991, Luciano filed suit in New York State Supreme Court, Nassau County, alleging: (1) trespass; (2) sexual discrimination and harassment resulting in wrongful discharge; (3) intentional infliction of emotional distress; and (4) battery.

The defendants removed the action, pursuant to 28 U.S.C. § 1441, to the United States District Court for the Eastern District of New York on June 13, 1991. In their Notice of Removal, the defendants assert jurisdiction under 28 U.S.C. §§ 1331 and 1334.

The bankrupt entity, Capital Resources, is organized under the laws of the State of New Jersey and has its home office in Clifton, New Jersey. Capital was engaged in the origination and servicing of mortgage loans in New Jersey, New York, Connecticut, Rhode Island, Massachusetts, Pennsylvania and Virginia. Prior to the filing of the bankruptcy petition, Capital had offices in Hawthorne and Hauppauge, New York, as well as in Westerly, Rhode Island.

### C. *The Complaint*

All of the causes of action asserted by Luciano arise out of her employment at Capital. The complaint alleges the following:

"10. At all times relevant to this action, the house in which Plaintiff lived was owned by Capital Resources. Plaintiff lived there at the specific request of Capital Resources in order to save the company insurance costs and to maintain and show the property to prospective purchasers.

11. During March, 1991, Luciano, on behalf of Capital Resources, obtained an offer for the purchase of the house for an amount $10,000 higher than its appraised value.

12. After this was reported to Maggio, he put his arm suggestively around Luciano's shoulder, squeezed it, and said that he was coming to Long Island to 'check out' what he termed 'my house' and to 'check out' her. Upon being told of this unseemly advance, DiPietro said to Luciano, in substance, 'Don't worry about it, I'm trying to set him [Maggio] up with you.'

13. Thereafter, unbeknownst to Luciano, on about April 2, 1991, Defendants Maggio, DiPetro and Ciliberti entered her Bellmore, New York residence and made an illegal search of her personal and private effects including dresser drawers, closets and various storage containers and receptacles.

14. When confronted with this humiliating break-in and trespass, all defendants admitted it; both DiPietro and Ciliberti claimed that it was Maggio's idea and responsibility. Maggio compounded his wrongful acts by firing Luciano and demanding that she vacate her home immediately.

\* \* \* \* \* \*

16. The wrongful acts which Defendants committed were done without Plaintiff's knowledge or consent and constituted an unlawful invasion of Plaintiff's tenancy and privacy. Luciano became extremely distressed and disturbed upon realizing that her home, including some of her most intimate and personal possessions, had been examined by three male colleagues.

\* \* \* \* \* \*

19. Within the first week of assuming his duties as Trustee, Maggio commenced a pattern of sexual harassment and discrimination against women employees. Since becoming Trustee and exercising personal control over all hiring and firing decisions, all employees who have been discharged have been women and the one employee who has been hired is a man. Further, all employees were told that they would have to take a 10% pay cut, but male employees were permitted to reduce their working hours by 20%, while women employees were allowed no reductions in working hours whatsoever ...

20. Luciano rebuffed Maggio's excual advances, objected to this discriminatory policy and sought equal treatment for female employees from DiPietro. As a result of the aforementioned unlawful discriminatory practices and in retaliation for her objections to them, Plaintiff was summarily fired and her managerial duties were assumed by DiPietro with her clerical duties being assigned to a female employee."

## II. PROCEDURAL SETTING

The defendants move, pursuant to 28 U.S.C. § 1412 to transfer this case to the United States District Court for the District of New Jersey. In support of the motion, Carmen Maggio, individually and as Trustee for Capital, has submitted an affidavit in which he states that prior to the bankruptcy petition, Capital was servicing a portfolio of approximately $220,000,-000.00 in loans for financial institutions as well as its own loan accounts.

In urging transfer, Maggio asserts that (1) Capital's home office has always been located in Clifton, New Jersey; (2) the bankruptcy proceeding is substantial and complex, particularly in light of the claims of approximately 23 creditor banks; (3) that as fiduciary for Capital's creditors, he is involved in the day-to-day operations of Capital and must communicate with state and county agencies; (4) that as Trustee, he is also responsible for the management and disposition of Capital's assets, including its real property, which he is attempting to liquidate; (5) that notwithstanding his other business interests, his responsibilities for Capital have required his constant attention—more than half of his work day each day in New Jersey; and (6) that the Luciano action affects Capital's bankruptcy case directly and significantly in that the plaintiff's lawsuit constitutes a claim against Capital's bankruptcy estate.

According to Maggio, "[t]he transfer of the Luciano Action to the United States District Court for the District of New Jersey would, in my judgment, be in the best

interests of Capital's bankruptcy estate, [and] would promote the efficient economic administration of the estate ..." (Maggio Affidavit, ¶ 26). Mr. Ciliberti "would prefer it if this matter were in a New Jersey court" (Ciliberti Affidavit, ¶ 4). Although Mr. DiPietro is a resident of New York, he "would prefer if this case were in New Jersey, where I work and where I am daily involved in the management of Capital" (DiPietro Affidavit, ¶ 17).

In opposing the motion, counsel for the plaintiff notes that the "very reason this case is in this Court at all is that the defendants themselves removed it here, purportedly pursuant to 28 U.S.C. § 1441. Under the statute, this was the *only* district to which this action was removable ..." (Plaintiff's Memorandum of Law at p. 3).

The plaintiff further contends that 28 U.S.C. § 1412, relied upon by the defendants, is inapplicable since it applies only to cases arising "under title 11," meaning "core actions" arising under the bankruptcy laws (*id.*). According to counsel for the plaintiff, this is simply a case "related to" a bankruptcy proceeding, which requires this Court to reach a decision under the general venue statute, 28 U.S.C. § 1404, and not § 1412.

## III. THE LAW CONCERNING "VENUE"

### A. *Venue Under Section 1409*

Venue for proceedings "arising under title 11 or arising in or related to a case under title 11" is governed by 28 U.S.C. § 1409, which provides in relevant part as follows:

"(a) Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 may be commenced in the district court in which such case is pending.

\*　\*　\*　\*　\*　\*

(e) A proceeding arising under title 11 or arising in or related to a case under title 11, based on a claim arising after the commencement of such case from the operation of the business of the debtor, may be commenced against the representative of the estate in such case in the district court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought an action on such a claim, or in the district court in which such case is pending."

The permissive aspect of § 1409(e) enabling a party to bring an action in the district in which it might have been brought under "applicable nonbankruptcy venue provisions" may be characterized as reflecting the Congressional intent "to return the postpetition reorganizing debtor to the mainstream of ordinary citizenry" (*In re Allegheny,* 74 B.R. 397, 400 [W.D.Pa. 1987]).

 Original venue, therefore, would have been proper in the federal district court for either the Eastern District of New York or the District of New Jersey.

### B. *Transfer Under Section 1412*

Transfer of venue for a case or proceeding under title 11 is governed by 28 U.S.C. § 1412 which provides that:

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

For purposes of bankruptcy procedure and jurisdiction, Congress has distinguished among cases under title 11, civil proceedings "arising under" title 11, civil proceedings "arising in" cases under title 11, and civil proceedings "related to" cases under title 11 (*see* 28 U.S.C. §§ 157, 1334).

Proceedings "arising under title 11" involve claims "made under a provision of title 11" (H.R.Rep No. 595, 95th Cong., 1st Sess. 445 [1977] U.S.Code Cong. & Admin.News 1978, p. 5787). The action must either be created by title 11 or involve administration of the estate "in the sense that no *adverse third party* is involved" (*see* 1 *Collier on Bankruptcy,* ¶ 3.01[1][c][iii] at 3–24 to 3–25) (emphasis supplied). Although "core proceedings",

which, by definition, would arise under title 11, include matters affecting the liquidation of the estate, personal injury tort claims are expressly excluded (28 U.S.C. § 157[b][2][O]).

Suits involving third parties that affect the administration of a title 11 case are characterized as "related proceedings" (*see* 1 *Collier on Bankruptcy*, ¶ 3.01[1][c][iv] at 3–26; *see also In re Colorado Energy Supply Inc.*, 728 F.2d 1283 [10th Cir.1984] [characterizing related proceedings as "civil proceedings that, in the absence of bankruptcy, could have been brought in a District or state court"]).

## IV. DISCUSSION

Clearly the plaintiff's cause of action is neither a case nor proceeding under title 11, but rather a related proceeding. The defendants claim that both the interest of justice and convenience of the parties will be served by transfer of venue to the District of New Jersey, pursuant to 28 U.S.C. § 1412. This Court disagrees.

As a related proceeding, transfer of venue in this case is governed by § 1404(a), which provides in relevant part as follows:

"(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The goal of 28 U.S.C. § 1404(a) "is to prevent waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense'" (*Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 [1964], *quoting Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26–27, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 [1960]).

■ The inquiry on such a motion to transfer is two-fold: *First,* whether the action sought to be transferred is one that "might have been brought" in the district court which the movant seeks to have the case litigated, *i.e.*, the "transferee" court. If so, *second,* whether, considering "the convenience of parties and witnesses" and "the interest of justice," a transfer to the proposed district is appropriate (*see Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 986 [E.D.N.Y.1991]; *Schneider v. Sears*, 265 F.Supp. 257, 261 [S.D.N.Y. 1967]).

■ On a motion to transfer, the movant bears the burden to "clearly" establish that a transfer is appropriate and that the motion should be granted (*see Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218–19 [2d Cir.1978], *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 [1979]; *see also Arrow Elecs., Inc. v. Ducommun, Inc.*, 724 F.Supp. 264, 265 [S.D.N.Y.1989], *quoting Morales v. Navieras de Puerto Rico*, 713 F.Supp. 711, 712 [S.D.N.Y.1989]; *Schneider v. Sears, supra,* 265 F.Supp. at 263).

■ With these principles in mind, the Court addresses the two-part inquiry.

(1) "Might Have Been Brought":

Non-core "related" proceedings are those matters that are traditional state law actions, not made subject to a federal rule of decision, but that are related, though only peripherally, to a pending bankruptcy case (*see In re Hudson Oil Company, Inc.*, 68 B.R. 735 [D.Kan.1986]). Accordingly, the bankruptcy court cannot constitutionally exercise the same degree of authority over related proceedings as it does over core proceedings. 28 U.S.C. § 157(a) thus provides that a bankruptcy court may hear related matters, but that if it does, it may only "submit proposed findings of fact and conclusions of law to the district court. . . ." (*see* § 157[c][1]).

The Court finds persuasive the district court's decision in *In re Hudson Oil Company, Inc., supra,* 68 B.R. at 735—a case in which a Chapter 11 debtor's former vice-president brought a retaliatory discharge action against the trustee in his personal capacity. In *Hudson Oil*, the court noted:

"[p]laintiff's suit is for retaliatory discharge, a state common-law cause of action. The rights that plaintiff alleges were violated and that he seeks to have vindicated thus spring from state law; they were not created by Congress. Accordingly, as the Court held in Marathon

[*Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)], the bankruptcy court cannot constitutionally be given the authority to finally decide plaintiff's claim ... the purpose of section 157(b)(3) was to make it clear that Marathon does not prevent bankruptcy courts from deciding core bankruptcy issues, even if those issues turn on resolution of state law. That is, Marathon simply established that Congress cannot allow bankruptcy judges to decide state law claims, as opposed to state law questions" (*id.* at 740).

Under these guidelines, then, the Court could possibly transfer the case to the bankruptcy court. However, the Court believes that such action would be far afield from the notion of judicial economy—particularly in light of the fact that the bankruptcy court would have to submit its findings of fact and conclusions of law to this Court for a subsequent *de novo* review.

The Court is also cognizant of the United States Supreme Court's decision in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Based on the Court's holding in *Granfinanciera*, the plaintiff in the instant case is entitled to a jury trial, under the Seventh Amendment, because her state law claims include legal as opposed to strictly equitable elements and because she seeks monetary relief. Therefore, any fact-finding here must be by a jury sitting before an Article III judge. In these circumstances then, this Court finds that a transfer of venue under this first prong is inappropriate.

 (2) "For the Convenience of Parties and Witnesses" and "in the Interest of Justice":

█ Whether an action should be transferred under section 1404(a) "is left to the sound discretion of the district court" (*Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 [2d Cir.1989] [citing cases]). In order to assist in this determination, the courts have employed a variety of factors that serve as a guidepost, none of which are singly disposi-tive. The most important of these factors include the convenience of the parties, the convenience of witnesses, the locus of operative facts, the availability of process to compel the attendance of witnesses to testify at trial, and the plaintiff's choice of forum (*see e.g., Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*, 745 F.Supp. 993, 996 [S.D.N.Y.1990]; *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F.Supp. 1314, 1321 [S.D.N.Y.1989]; *Turner v. Hudson Transit Lines, Inc.*, 724 F.Supp. 242, 243 [S.D.N.Y.1989]; *Miller v. County of Passaic*, 699 F.Supp. 409, 411 [E.D.N.Y.1988], *citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08, 67 S.Ct. 839, 842–43, 91 L.Ed. 1055 [1947]).

The convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether a transfer should be granted (*see Hernandez v. Graebel Van Lines, supra*, 761 F.Supp. at 988–989; *Nieves v. American Airlines*, 700 F.Supp. 769, 772 [S.D.N.Y.1988]; *Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257, 259 [S.D.N.Y.1974]). In this case, the Court finds very little inconvenience in getting the trustee from Clifton, New Jersey over the George Washington Bridge and shortly thereafter into the Eastern District of New York.

"Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed" (*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 [1947]). In the instant case, the alleged trespass took place in New York. Two of the three defendants are residents of New York. Although the plaintiff has since moved away from New York, and although other acts took place in New Jersey, the Court finds these factors insufficient to overcome the presumption in favor of the plaintiff's choice of forum.

## V. CONCLUSION

For the reasons stated above, after considering the relevant factors, the Court

concludes that this action should remain in the Eastern District of New York.

Therefore, the defendants' motion to transfer this action, pursuant to 28 U.S.C. § 1412 and/or § 1404(a) is denied.

SO ORDERED.