**PLAZA AT LATHAM ASSOCIATES,**
**Appellant–Plaintiff**

v.

**CITICORP NORTH AMERICA,**
**INC., Appellee–Defendant;**

**Interstate Department Stores, Inc. and Travelers Insurance Company,**
**Defendants.**

**No. 91–CV–800.**

United States District Court,
N.D. New York.

Feb. 8, 1993.

Roemer & Featherstonhaugh (Michael J. Smith, Bonnie M. Weir, of counsel), Albany, NY, for appellant-plaintiff.

Chamberlain, D'Amanda, Oppenheimer & Greenfield (Patrick J. Mackrell, of counsel), Albany, NY, for appellee-defendant Citicorp North America, Inc.

Lee & Leforestier, P.C. (Thomas A. Dussault, of counsel), Troy, NY, for defendant Interstate Dept. Stores, Inc.

Gennett and Kallmann (Stanley W. Kallmann, of counsel), Roseland, NJ, for defendant Travelers Ins. Co.

Gregory Harris, Albany, NY, Trustee in Bankruptcy.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

This matter is before the court on Plaza at Latham Associates' ("Plaza") appeal of an order of Judge Justin J. Mahoney of the United States Bankruptcy Court, Northern District of New York, dated June 12, 1991, approving a settlement of an insurance claim between Interstate Department Stores, Inc. ("debtor") and Travelers Insurance Company ("Travelers"). The order instructed Travelers to pay certain insurance proceeds to debtor, who in turn was to remit the proceeds to creditor Citicorp North America, Inc. ("Citicorp"). In consideration of this one time payment, Travelers was released from all liability to any entities for claims to the insurance proceeds. For the reasons stated below, the court affirms the decision of the bankruptcy court in its entirety.

**1.** Pursuant to an order of the bankruptcy court dated March 19, 1991, debtor's bankruptcy was converted to a Chapter 7 case.

**2.** Rule 9019 states, in pertinent part: "On motion by the trustee and after a hearing on notice to creditors, the United States trustee, the debtor

## I. BACKGROUND

Appellant Plaza is the owner of Latham Circle Mall located in Latham, New York. Debtor leased premises from Plaza through which it operated a retail establishment known as the Boston Store. On October 14, 1989, a fire apparently caused by the negligence of one of debtor's employees destroyed debtor's store and caused extensive damage throughout the mall. The debtor requested additional rental space from Plaza for storage of inventory and equipment. Plaza agreed to the request because debtor's insurance policy with Travelers included coverage for expenses incurred due to a business interruption caused by fire, which included rent for additional space. That insurance policy named Citicorp as loss payee. Debtor subsequently submitted claims to Travelers for additional rent in the amount of $98,478.50. Travelers paid debtor monies in connection with these claims and debtor in turn made payment to Citicorp as loss payee.

On July 20, 1990, debtor filed a petition under Chapter 11 of the United States Bankruptcy Code (the "Code"). 11 U.S.C. § 301.[1] In regard to this petition, Plaza filed a proof of claim with the Bankruptcy court pursuant to 11 U.S.C. § 501 seeking, *inter alia*, money owed for the rental of additional space subsequent to the fire.

In early 1991, Travelers proposed a settlement of all claims under the insurance policy by making an additional payment of $150,000 to debtor. As a loss payee on the insurance policy, Citicorp sought entitlement to the entirety of those insurance proceeds. Plaza also sought entitlement to a portion of those insurance proceeds as reimbursement for unpaid rent for additional space after the fire.

On May 23, 1991, the bankruptcy trustee for debtor and Citicorp applied to the bankruptcy court, pursuant to Bankruptcy Rule 9019,[2] for approval of a settlement of the

and indenture trustees as provided in Rule 2002 and to such other entities as the court may designate, the court may approve a compromise or settlement."

insurance claim against Travelers. Plaza opposed the settlement since it sought to satisfy its claim to a portion of the insurance proceeds for rent. On the same day, Plaza filed a complaint in the bankruptcy court against debtor, Travelers, and Citicorp for breach of fiduciary duty, conversion, negligence, and unjust enrichment.

After conducting a hearing on the matter, Judge Mahoney issued an order approving the settlement on June 12, 1991. The order required the following: (1) the trustee and Citicorp to execute a general release and subrogation agreement; (2) Travelers to thereafter issue a check in the amount of $150,000 payable to Citicorp and debtor; (3) the trustee to endorse the check in the name of the debtor, and deliver it to the attorney for Citicorp; and (4) upon payment of the check, Travelers to be released from "any liability whatsoever to any person, party or entity on account of claims to the fire insurance proceeds paid on account of claims by the Debtor and/or Citicorp for loss or damage caused by [the] fire." The order concluded by stating that it was not intended to affect or alter any subrogation rights between Plaza and any insurance company that issued a policy for the benefit of Plaza.

Plaza makes two arguments on appeal: first, that the bankruptcy court lacked jurisdiction to bar a claim by Plaza against Travelers and Citicorp, and second, that the bankruptcy court erred in releasing Travelers from any liability to any person, party or entity on account of claims to fire insurance proceeds. In response, Citicorp asserts that the bankruptcy court, pursuant to its authority under 28 U.S.C. § 157, had subject matter jurisdiction to approve the compromise and settlement of a claim of the estate and to direct distribution of the proceeds of the settlement. In addition, Citicorp argues that, according to 28 U.S.C.

§§ 157(b)(2)(A), (K), and (O), as well as Bankruptcy Rule 9019, the bankruptcy court's release of Travelers from liability to any person, party, or entity in connection with the settlement of a claim to the fire insurance proceeds was proper and within its authority.

## II. DISCUSSION

The court's jurisdiction to hear an appeal from a decision of the bankruptcy court is conferred by 28 U.S.C. § 158(a), which provides in pertinent part that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court from interlocutory order and decrees, of bankruptcy judges...." A district court reviewing the conclusions of law of a bankruptcy court must do so on a "de novo" basis, *In re Hotel Syracuse*, 1991 WL 274253, 1991 U.S. Dist. LEXIS 18580 (N.D.N.Y. December 19, 1991) (Munson, S.J.); *In re PCH Assoc.*, 949 F.2d 585, 597 (2d Cir.1991) (citing *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987) (per curiam), whereas findings of fact are reviewed on a "clearly erroneous" basis. *Id.*; 11 U.S.C. Rule 8013.

Before addressing the specific arguments of the parties on appeal, the court will set forth the principles of law governing the bankruptcy court's subject matter jurisdiction. The bankruptcy court's subject matter jurisdiction is defined by 28 U.S.C. §§ 157 and 1334. Section 1334(b) states, in relevant part, that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Upon referral by the district court, four categories of subject matter are vested in the bankruptcy court's jurisdiction: (1) cases "under title 11"; [3] (2) civil proceedings "arising under title 11"; [4]

---

3. A case "under title 11" is one that is commenced, either voluntarily or involuntarily, by filing a petition with the bankruptcy court under the appropriate chapter of title 11. 11 U.S.C. §§ 301, 302, and 303.

4. A civil proceeding that "arises under" title 11 "must either be created by title 11 or involve administration of the estate." *Luciano v. Mag-*

*gio,* 139 B.R. 572, 575 (E.D.N.Y.1992). "'Arising under' jurisdiction includes only those proceedings that involve a cause of action 'created or determined by a statutory provision of title 11'." *In re Leco Enterprises, Inc.,* 144 B.R. 244, 248 (S.D.N.Y.1992) (quoting *Spaulding & Co. v. Buchanan,* 131 B.R. 84, 88 (N.D.Ill.1990)).

(3) civil proceedings "arising in" a case under title 11;[5] and (4) civil proceedings "related to" a case under title 11.[6] 28 U.S.C. § 157(a).[7]

■ Of the four categories of subject matter vested within the bankruptcy court's jurisdiction, cases and proceedings which "arise under" or "arise in" title 11 are considered "core proceedings" and trigger the bankruptcy court's power to enter "appropriate orders and judgments." 28 U.S.C. § 157(b)(1).[8] Bankruptcy courts have subject matter jurisdiction regardless of a proceeding's core or non-core status, but they may enter appropriate orders and judgments only in "core proceedings." 28 U.S.C. § 157(b); In re Wefco, Inc., 97 B.R. 749, 751 (E.D.N.Y.1989). The importance of the jurisdictional distinction between core and non-core status was expressed in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982). Justice Brennan, writing for a plurality, invalidated the broad grant of jurisdiction to bankruptcy courts provided for in the Bankruptcy Act of 1978. Justice Brennan limited the bankruptcy court's power to enter appropriate order and judgments to matters which lie "at the core of the federal bankruptcy power." Id. (emphasis added). Proceedings that fall outside of this "core" must be adjudicated by Article III judges rather than bankruptcy judges. Id.

at 81, 102 S.Ct. at 2876 ("Article III bars Congress from establishing legislative courts that exercise jurisdiction over all matters related to those arising under the bankruptcy laws.").

Congress subsequently enacted 28 U.S.C. § 157(b)(2) which codified the analysis of Justice Brennan in Marathon. Section 157(b)(2)(A) through (O) sets forth a nonexclusive, representative list of core proceedings.[9] A review of the legislative history of the statute reveals that Congress intended a broad interpretation of the parameters of a core proceeding. In re Arnold Print Works, Inc., 815 F.2d 165, 168 (1st Cir. 1987) ("The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings."). The Second Circuit has accepted this interpretation. In re Ben Cooper, Inc., 896 F.2d 1394, 1398–99 (2d Cir. 1990).

■ Non-core proceedings are those which are "otherwise related to the case under title 11." 28 U.S.C. § 157(b)(3) (emphasis added); In re Manville Forest Products Corp., 896 F.2d 1384, 1389 (2d Cir. 1990). A bankruptcy court's "related to" jurisdiction involves a proceeding which has a "significant connection" to the debtor's bankruptcy but does not satisfy the "arising under" or "arising in" standard. Turner, 724 F.2d at 341 (interpreting the

5. "'Arising in' jurisdiction encompasses 'those administrative matters that arise only in bankruptcy cases'—matters not based on any right expressly created by title 11, but that would have no existence outside of the bankruptcy." In re Leco Enterprises, Inc., 144 B.R. at 248 (quoting Spaulding & Co. v. Buchanan, 131 B.R. at 88).

6. The Second Circuit defines "related to" jurisdiction broadly. A bankruptcy court's "related to" jurisdiction requires a showing of any "significant connection" to the debtor's bankruptcy. Turner v. Ermiger, 724 F.2d 338, 341 (2d Cir. 1983); In re General American Communications Corp., 130 B.R. 136, 156 (S.D.N.Y.1991).

7. Section 157(a) provides: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

8. Section 157(b)(1) states: "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate order and judgments, subject to review under section 158 of this title."

9. Most significant from the standpoint of the instant appeal, 28 U.S.C. § 157(b)(2) states in pertinent part: "Core proceedings include, but are not limited to—(A) matters concerning the administration of the estate; ... (K) determinations of the validity, extent, or priority of liens; ... and (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."

then existing emergency resolution adopted by order of the Northern District of New York to deal with problems caused by *Marathon* ).

■ In a non-core proceeding, a bankruptcy judge's power of resolution is limited; the bankruptcy court may only "submit proposed findings of fact and conclusions of law to the district court" and must refrain from entering final orders and judgments. 28 U.S.C. § 157(c)(1).[10]

■ Of course, if the bankruptcy court lacks subject matter jurisdiction completely, the bankruptcy court cannot adjudicate the dispute or submit proposed findings and conclusions to the district court. Generally, bankruptcy courts lack jurisdiction to hear controversies between third parties which do not involve the debtor or property of the debtor, unless the court cannot perform its administrative duties without resolving the controversy. *General American Communications Corp.*, 130 B.R. at 157; *Gordon v. Shirley Duke Associates, A.P.I.*, 611 F.2d 15, 18 (2d Cir.1979). Three elements must be satisfied in order to divest the bankruptcy court of its jurisdiction: (1) the proceeding must involve nondebtor, third-parties, (2) the proceeding must not involve the property of the debtor, and (3) the proceeding must not involve a necessary administrative function.

Turning to the case at bar, appellant argues that the adversary proceeding below fell within the general rule that bankruptcy courts do not have subject matter jurisdiction over controversies solely and exclusively between third parties not involving, directly or indirectly, the debtor or its property and cites several cases standing for this proposition. *See, In re Matter of Emergency Beacon Corp.*, 665 F.2d 36 (2d Cir.1981); *In re S & S 31 Flavors, Inc.*, 118 B.R. 202, 204 (Bkrtcy.E.D.N.Y.1990); *In re Chase Manhattan Mortgage and Realty Trust*, 11 B.R. 982 (Bkrtcy. S.D.N.Y. 1981). Specifically, appellant asserts that

the adversary proceeding did not in any way involve the debtor or the property of the debtor. Plaza also asserts that the bankruptcy court lacked jurisdiction over the adversary proceeding because it involved a "putative controversy between third parties, the merit of which may very well be subject to judicial determination at a later time and place but which does not effect the administration of the estate." Brief of Appellant, Doc. 2, at 6. As authority, Plaza cites *In re Matter of Johns–Manville Corp.*, 68 B.R. 618, 632 (Bkrtcy. S.D.N.Y.1986) ("*Johns–Manville I*") (bankruptcy court determined that a proceeding concerning a fee arrangement between claimant and claimant's attorney was a putative controversy not within its jurisdiction). Plaza contends that the bankruptcy court's order improperly prevents Plaza from seeking recovery in an adversary action that it instituted against Travelers. In the alternative, appellant contends that even if the court below was vested with subject matter jurisdiction, the settlement of all claims under the insurance policy was not at the "core" of the bankruptcy court's jurisdiction, and therefore the court did not have the authority to enter an order barring the claim by Plaza.

In response, appellee does not directly address appellant's argument that the bankruptcy court lacked jurisdiction over the proceeding because it did not involve the debtor or the property of the debtor. However, appellee contends that the matter presented to the bankruptcy court was a "core" proceeding because it involved matters concerning the administration of the estate, 28 U.S.C. § 157(b)(2)(A), a determination as to the validity, extent and priority of liens, 28 U.S.C. § 157(b)(2)(K), and the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship, 28 U.S.C. § 157(b)(2)(O). As such, appellee argues that the court was authorized to issue the order in question.

---

**10.** Section 157(c)(1) states, in pertinent part: "In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the dis-

trict judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party timely and specifically objected."

■ The initial determination that must be made by the court is whether the bankruptcy court properly invoked its subject matter jurisdiction in entering the June 12, 1991 order. Contrary to appellant's argument, the court concludes that the present case does not fall within the general rule which precludes the vesting of subject matter jurisdiction in the bankruptcy court. This conclusion is mandated by the court's finding that the present controversy involves the "property" of the debtor.

"The filing of [a bankruptcy] petition sets in motion several events. Most significant from the standpoint of the instant appeal is that it creates the 'estate' for bankruptcy purposes." *Ben Cooper,* 896 F.2d at 1399 (citing 11 U.S.C. § 541(a)). "It is well established that a bankruptcy court has jurisdiction over all of the property of the debtor's estate, wherever located." *MacArthur Company v. Johns–Manville Corporation,* 837 F.2d 89, 91 (2d Cir.1988) *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988) ("*Johns–Manville II* "). In the present case, the court concludes that fire insurance and its proceeds are property of the debtor's estate.

The term "property of the estate" has been defined broadly by the courts. The Second Circuit has stated:

> The Bankruptcy Code broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This provision has been construed expansively: "The scope of this paragraph [section 541(a)(1) ] is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in Section 70a of the Bankruptcy Act." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9 [103 S.Ct. 2309, 2314 n. 9, 76 L.Ed.2d 515] (1983) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5868).

*Id.* at 91–92. The Second Circuit has consistently characterized a debtor's rights under its insurance policy as property of the debtor's estate under § 541(a) of the Bankruptcy Code. *In re St. Clare's Hosp. and Health Center,* 934 F.2d 15, 18 (2d Cir. 1991) (hospital liability insurance); *Johns–Manville II,* 837 F.2d at 92 (asbestos-related liability insurance); *Bradt v. Woodlawn Auto Workers, Federal Credit Union,* 757 F.2d 512 (2d Cir.1985) (motor vehicle insurance); *In re Mego Intern, Inc.,* 28 B.R. 324, 326 (Bkrtcy.S.D.N.Y.1983) (officer and director insurance); *In re Pearl–Wick Corp.,* 15 B.R. 143, 148 (Bkrtcy.S.D.N.Y. 1981), *aff'd,* 26 B.R. 604, 605 (S.D.N.Y. 1982), *aff'd,* 697 F.2d 295 (2d Cir.1982) (life insurance). Upon recognition that an insurance policy and any rights derived therefrom are a portion of the bankruptcy estate, appellant's contention that the bankruptcy court lacked subject matter jurisdiction over this adversary proceeding because the action did not involve the debtor or property of the debtor is unpersuasive. The present proceeding does involve property of the estate. The present fire insurance policy and the proceeds therefrom constitute debtor's property.

The court does not find *Johns–Manville I* controlling in the instant case. *Johns–Manville I,* 68 B.R. at 632. In *Johns–Manville I,* the bankruptcy court was asked to rule on whether the determination of the reasonableness of fee arrangements between a claimant and his attorney was within the bankruptcy court's jurisdiction. In concluding that the proceeding did not affect the property of the estate, and thus did not confer jurisdiction upon the court, the court stated that "the reasonableness of the contingency fee arrangement between individual creditors and their counsel does not affect the particular parties before me today." *Id.* The present proceeding is highly distinguishable. The distribution of insurance proceeds pursuant to an insurance policy is material to the distribution of the debtor's estate, and the merits of a proceeding to determine such distribution is properly the subject of the present judicial determination.

■ In light of the court's determination that the bankruptcy court had jurisdiction

over the present proceeding, the court must next turn to appellant's arguments that, even assuming the bankruptcy court had subject matter jurisdiction, it did not have the authority to adjudicate and issue the June 12, 1991 order. The specific question before the court is whether the adversary proceeding below fell within "the core of the federal bankruptcy power," *Marathon Pipe Line Co.*, 458 U.S. at 71, 102 S.Ct. at 2871, and thus invoked the bankruptcy court's adjudication powers, or whether the proceeding merely existed in the realm of "related to" status. The court concludes that the bankruptcy court was vested with the power to approve the settlement and direct the distribution of the proceeds of the insurance policy because the proceeding falls (1) within the general definition of a "core" proceeding set forth in 28 U.S.C. § 157(b)(1) ("proceedings arising under title 11 or arising in a case under title 11") and (2) within three of the enumerated categories of "core" proceedings listed in 28 U.S.C. § 157(b)(2).

The compromise and settlement between debtor, Travelers, and Citicorp, and the subsequent payments approved by the bankruptcy court, falls within the general principles of "arising under" and "arising in" jurisdiction and triggers "core" jurisdiction. This action involves substantive rights created by title 11 or matters that can arise only in the context of a bankruptcy case. In particular, Bankruptcy Rule 9019 confers upon the bankruptcy court the responsibility of approving or denying a compromise and settlement. Indeed, compromises are a normal part of a bankruptcy case. *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130, 60 S.Ct. 1, 14, 84 L.Ed. 110 (1939) ("Settlement of such conflicting claims to the *res* in the possession of the court is a normal part of the process of reorganization."). The compromise, settlement, and payment of the estate's claim against Travelers on account of the insurance policy and the adjudication of Citicorp's interest in the proceeds of the insurance policy as loss payee and secured creditor are resolutions that are properly resolved through the supervision of the bankruptcy court. This proceeding is of the type that falls within Justice Brennan's vision of the role of the bankruptcy courts to restructure debtor-creditor relations.

In addition to a finding of subject matter jurisdiction based on the general definition of "core" proceeding, the court also finds that the proceeding to settle the insurance claim falls within the enumerated § 157(b)(2) core proceedings. Specifically, the bankruptcy court's order to bar a claim by Plaza against Travelers and Citicorp falls within the scope of § 157(b)(2)(A). *See supra* note 9. The Second Circuit has announced that this provision should be interpreted broadly. *Ben Cooper*, 896 F.2d at 1399. However, "it was also recognized that a literal translation of this provision would include as a core proceeding almost any matter relating to a bankruptcy, and such a reading would render the remainder core categories in § 157(b)(2)(B)–(O) superfluous." *In re SPI Communications & Marketing, Inc.*, 114 B.R. 14, 17 (N.D.N.Y. 1990) (Cholakis, J.) (citing *Ben Cooper*, 896 F.2d at 1399).

In *In re Johns–Manville*, 801 F.2d 60, 64 (2d Cir.1986) ("*Johns–Manville III*"), the bankruptcy court for the Southern District of New York relied on § 157(b)(2)(A) for jurisdiction. The court found that an action seeking to enjoin the pursuit of a state action was a "core" proceeding, encompassing "[m]atters concerning the administration of the estate." *Id.* at 64. The claims and assertions before Judge Mahoney were similar to those in *Johns–Manville III*. By limiting subsequent claims against Travelers, Judge Mahoney's order prevents disruption of an approved settlement. Therefore, the present proceeding achieves "core" status because it involves matters "concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A).

Moreover, the adversary proceeding in the instant case concerns the liquidation of an asset of the debtor's estate, namely a determination of the priority of liens in the insurance proceeds. This type of proceeding clearly falls within the meaning of § 157(b)(2)(K). *See supra* note 9; *United Jersey Bank v. C.S. Associates*, 1990 WL 134458, at 5 (Bkrtcy.E.D.Pa., Sept. 14,

1990) (determination of priority of liens in insurance proceeds is a core proceeding within meaning of § 157(b)(2)(K)). The circumstances giving rise to the bankruptcy court's order required the settlement of conflicting claims of priority and proper distribution to this portion of the debtor's estate. Both Plaza and Citicorp assert a right to the proceeds of the insurance settlement. The bankruptcy court is the arena best equipped to resolve this type of dispute.

Finally, the proceeding at bar is a core-proceeding within the meaning of § 157(b)(2)(O). *See supra* note 9. The present matter concerns the adjustment of the debtor-creditor relationship. In particular, it involves a claim for a portion of insurance proceeds for rent for additional space after a fire. Prompt resolution of the adversary proceeding is essential to the adjustment of the debtor-creditor relationship since these funds are inextricably linked to the liquidation of the estate. *See In re Leco Enterprises*, 125 B.R. 385, 391 (S.D.N.Y.1991) (proceeding involving administration and liquidation of an account receivable falls within the plain meaning of § 157(b)(2)(O)). Therefore, the present proceeding achieves "core" status because it involves "the adjustment of the debtor-creditor ... relationship." 28 U.S.C. § 157(b)(2)(O); *Marathon Pipe Line Co.*, 458 U.S. at 71, 102 S.Ct. at 2871 ("the restructuring of debtor-creditor relations ... is at the core of the federal bankruptcy power....").

Because the bankruptcy court's jurisdiction was "core," it had the power to enter "appropriate orders and judgments." 28 U.S.C. § 157(b)(1). *See supra* note 8. The bankruptcy court's June 12, 1991 order directed distributions of the insurance proceeds and released Travelers from all liabilities for claims to the proceeds. Under the present circumstances, this order was clearly appropriate.

The Second Circuit has recognized that "a bankruptcy court is authorized, once jurisdiction is established, to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' This provision includes the authority to enjoin litigants from pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate." *Johns–Manville III*, 801 F.2d at 63 (citing *In re Davis*, 730 F.2d 176, 183–84 (5th Cir.1984)).

Analogous to the case at bar is *Johns–Manville II*, 837 F.2d at 91. There the bankruptcy court, during the course of the bankruptcy case, approved settlements between the debtor and some of its insurance carriers whose policies were the property of the estate. In addition, and most pertinent to the present appeal, the court permanently enjoined third parties from proceeding against the policies. On appeal, the Second Circuit upheld the injunction and the bankruptcy court's finding that to not enter an injunction would adversely affect estate property and interfere with reorganization. *Id.* at 94. The court observed that the "underlying principle of preserving the debtor's estate for the creditors ... is a fundamental part of the bankruptcy law." *Id.* Similarly, the June 12, 1991 order issued by Judge Mahoney prevents Travelers from being haled into court to defend the restructuring of the debtor-creditor relationship and preserves the reorganization of the estate as it has evolved through the parties' arguments and judicial determinations. Therefore, the court concludes that the present proceeding falls under the enumerated § 157(b)(2) core proceedings.

## III. CONCLUSION

In summary the court concludes that the bankruptcy court clearly had subject matter jurisdiction to effectuate the settlement and compromise between debtor, Travelers, and Citicorp through the court's June 12, 1991 order. The bankruptcy court also had authority to direct distribution of the insurance proceeds and prevent third parties from commencing an action against Travelers to recover certain sums, since this action could conceivably have an effect on the estate being administered in bankruptcy.

For the foregoing reasons, the order of the bankruptcy court is affirmed in its entirety.

It is So Ordered.