In re ENRON CORP., et al., Debtors.

Enron Corp., Plaintiff,

v.

Harpreet S. Arora, et al., Defendants.

Bankruptcy No. 01–16034 (AJG).
Adversary No. 03–92909 (AJG).

United States Bankruptcy Court,
S.D. New York.

Dec. 13, 2004.

Kronish, Lieb, Weiner & Hellman LLP, Ronald R. Sussman, James A. Beldner, Gregory G. Plotko, of Counsel, New York, NY, Attorneys for the Official Employment–Related Issues Committee of Enron Corp., et al., acting on behalf of Enron Corp., as Plaintiff.

Ashby & Geddes, James McC. Geddes, Gregory A. Taylor, of Counsel, Wilmington, DE, Attorneys for Carol Baxter, as Executrix for the Estate of John C. Baxter.

Baker Botts L.L.P., Thomas R. Trowbridge, III, Tony M. Davis (Houston, Texas), of Counsel, New York, NY, Attorneys for L. Diane Bazelides and Philip J. Bazelides.

Balch & Bingham LLP, W. Clark Watson, Christie Lyman Dowling, of Counsel, Birmingham, AL, Attorneys for James L. Noles.

John H. Bennett, Jr., P.C., John H. Bennett, Jr., of Counsel, Houston, TX, Attorney for Stuart W. Staley.

Brown McCarroll, L.L.P., Patricia B. Tomasco, Kell C. Mercer, of Counsel, Austin, TX, Attorneys for Claibourne L. Harris.

Dewey Ballantine LLP, Dianne Coffino, Carey D. Schreiber, of Counsel, New York, NY, Attorneys for Carol Baxter, as Executrix for the Estate of John C. Baxter.

Floyd, Jones, Rios & Wahrlich, P.C., David R. Jones, Blake E. Rizzo, of Counsel, Houston, TX, Attorneys for Donald W. Black, Richard B. Buy, Mark A. Frevert, Eric Gonzales, R. Davis Maxey, Peggy B. Menchaca, Mark S. Muller, Cindy K. Olson, Colleen Sullivan–Shaklovitz, and Mark E. Taylor.

Gardere Wynne Sewell LLP, Holland N. O'Neil, Michael P. Cooley, of Counsel, Dallas, TX, Attorneys for Michelle H. Cash.

Law Offices of Matthew Hoffman, Matthew Hoffman, of Counsel, Houston, TX, Attorneys for Stuart W. Staley.

Martin, Disiere, Jefferson & Wisdom, L.L.P., James M. Cleary, Jeffrey G. Tinkham, of Counsel, Houston, TX, Attorneys for Michael Lynn Brown and Paul H. Racicot, Jr.

Pino & Associates, LLP, Melissa R. Gassler, of Counsel, White Plains, NY, Attorneys for James L. Noles.

Sterling Minor Law Firm, Sterling A. Minor, of Counsel, Houston, TX, Attorneys for Robert Scott Gahn.

## MEMORANDUM DECISION AND ORDER DENYING CERTAIN DEFENDANTS' MOTIONS TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1412

ARTHUR J. GONZALEZ, Bankruptcy Judge.

Before the Court are motions brought by certain former employees of the debtors, moving for, among other things, to transfer venue pursuant to section 1412 of

title 28 of the United States Code.[1] Upon consideration of the parties' pleadings and arguments made at the hearing regarding such transfer of venue motions, the Court denies the relief requested.

## I. Background

### A. *General Procedural History*

Commencing on December 2, 2001 (the "Petition Date"), Enron Corp. ("Enron") and certain of its affiliated entities (collectively, the "Debtors") filed for voluntary petitions for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been procedurally consolidated for administrative purposes. As of the date hereof, the Debtors continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.

On December 12, 2001, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the Southern District of New York (the "United States Trustee") appointed the Official Committee of Unsecured Creditors of Enron Corp., *et al.* (the "Creditors' Committee"), which had been reconstituted from time to time.

On February 21, 2002, the Court directed the United States Trustee to appoint an examiner (the "ENA Examiner") in the Enron North America Corp. debtor case pursuant to section 1104 of the Bankruptcy Code. The Court entered an order on March 12, 2002 approving the appointment of Harrison J. Goldin as the ENA Examiner. At various intervals, the ENA Examiner filed reports concerning these cases.

On March 27, 2002, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee appointed the Official Employment–Related Issues Committee of Enron Corp., *et al.* (the "Employee Committee") in the Debtors' chapter 11 cases. The Employee Committee has been reconstituted from time to time.

The Court also directed on April 8, 2002 the appointment of an examiner (the "Enron Examiner") in the Debtors' cases pursuant to section 1104 of the Bankruptcy

---

1. Some movants in the instant adversary proceedings also filed motions requesting, among other things, (1) to transfer venue to another district pursuant to section 1409(d) of title 28 of the United States Code, and (2) to dismiss the proceedings based on (a) lack of personal jurisdiction pursuant to rule 7004 of the Federal Rules of Bankruptcy Procedure (each rule entitled the "Bankruptcy Rule"), (b) the complaint allegedly having no averments that can establish personal jurisdiction pursuant to rule 8(a)(1) of the Federal Rules of Civil Procedure (each rule entitled the "Rule"), made applicable herein by Bankruptcy Rule 7008(a), (c) the complaint's alleged failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6), made applicable herein by Bankruptcy Rule 7012(b), and (d) the complaint's failure to join a certain Enron entity as a necessary party pursuant to Rule 12(b)(7).

This Court issued a memorandum decision and order on October 14, 2004, denying movants' motions to transfer venue pursuant to section 1409(d). On October 25, 2004, movant Stuart W. Staley ("Staley") filed a motion seeking this Court's reconsideration of the October 14, 2004 memorandum decision and order. In response, on November 11, 2004, the Official Employment–Related Issues Committee of Enron Corp., *et al.* (the "Employee Committee") filed its opposition to such motion to reconsider.

On November 1, 2004, the Court also issued a memorandum decision and order denying movants' motions to dismiss the adversary proceedings pursuant to Bankruptcy Rule 7004 and Rules 8(a)(1) and 12(b)(2), (6), and (7). On November 11, 2004, Staley filed a motion seeking this Court's reconsideration of the November 1, 2004 memorandum decision and order. The Employee Committee on November 19, 2004 filed its opposition to such motion to reconsider.

Code to inquire into, among other things, all transactions involving special purpose vehicles or entities created or structured by or for the Debtors, and transactions not reflected on the Debtors' balance sheets or not reflected in the respective Debtor's financial statements in accordance with generally accepted accounting principles. On May 24, 2002, an order was entered approving the United States Trustee's appointment of Neal Batson, Esq., as the Enron Examiner. At various intervals, the Enron Examiner filed reports concerning these cases.

On June 3, 4, 7, 8, 9, 10, 14, 16, 17, and 18, 2004, this Court held a confirmation hearing (the "Confirmation Hearing") to consider a plan of reorganization under chapter 11 of the Bankruptcy Code proposed by the Debtors. Following the conclusion of the Confirmation Hearing, the Debtors filed their Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan") on July 2, 2004. The Plan reflects certain agreements made during the Confirmation Hearing. On July 15, 2004, the Court entered findings of fact and conclusions of law supporting confirmation of the Plan, and entered an order confirming the Plan and the global compromise of interestate issues embodied in the motion filed by the Debtors, approving the global compromise in the event the Plan is not confirmed or does not become effective for one or more of the proponents of the Plan. The Plan provides for the disposition of all of the Debtors' assets and the distribution of value realized therefrom in accordance with the priority scheme of the Bankruptcy Code. Following the entry of the July 15, 2004 order, various appeals to Plan confirmation were filed. To date, no requests for a stay pending appeal have been filed. On November 17, 2004, the Debtors filed a Notice of Occurrence of Effective Date and Deadline for the Filing of Claims for Administrative Expenses.

## B. Avoidance Actions

There have been a number of avoidance actions brought by the Creditors' Committee acting on behalf of Enron as plaintiff, the Employee Committee acting on behalf of itself as plaintiff, and the Employee Committee acting on behalf of Enron as plaintiff. In the instant ·adversary proceedings, unless specified to the contrary, the Employee Committee is acting on Enron's behalf and not in its (the Employee Committee's) individual capacity.

### 1. Bonus Avoidance Actions in Houston

The Court entered an order on August 28, 2002, assigning and authorizing, among other things, the Employee Committee to investigate and prosecute, on its own behalf, certain avoidance actions (the "Bonus Avoidance Actions") against each Enron employee who received certain bonuses from Enron within days before the Petition Date. On March 14, 2003, the Employee Committee filed Bonus Avoidance Actions against recipients of such bonuses in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Houston Bankruptcy Court"). See Enron Corp. v. Arora (In re Enron Corp.), 316 B.R. 434, 437 n. 3 (Bankr.S.D.N.Y.2004) (discussing Bonus Avoidance Actions in greater detail). Reference to the Houston Bankruptcy Court regarding several adversary proceedings encompassed by the Bonus Avoidance Actions were withdrawn on November 19, 2004 and such proceedings have been assigned to the Honorable Melinda Harmon, United States District Judge, in the United States District Court for the Southern District of Texas, Houston Division (the "Houston District Court").

### 2. Creditors' Committee's Avoidance Actions In New York

By order dated December 1, 2003, this Court also authorized, among other things, the Creditors' Committee to commence, on behalf of the Debtors, avoidance proceedings under sections 544, 547, 548, and 550 of the Bankruptcy Code against certain former insider employees of the Debtors and professional firms. On that same day, the Creditors' Committee filed actions in this Court against former Enron insider employees, seeking to avoid and recover alleged preferential and/or fraudulent transfers made by the Debtors within one year preceding the date the Debtors filed their respective bankruptcy cases.

### 3. Accelerated Distribution Avoidance Actions In New York

Based on allegations of the parties, Enron and its affiliates had two active non-qualified deferred compensation plans in effect in 2001, that is, the Enron Corp. 1994 Deferral Plan, Restated as of October 6, 2000, and the Enron Expat. Services, Inc. 1998 Deferral Plan, Restated as of September 1, 2001 (collectively, the "Deferral Plans"). On or about October 2001 through November 2001, there were approximately 240 to 350 participants in the Deferral Plans.

Certain qualified executive employees (known as "Top–Hat" employees) of Enron or its affiliates were permitted under the Deferral Plans to defer current earnings and, thereby, defer taxes on the amounts deferred. The Deferral Plans provided that the deferred compensation owed to Top–Hat employees was part of the general corporate assets of the Debtor and that, with respect to benefits under the Deferral Plans, such obligations were unsecured obligations of Enron and its affiliates.

Under the Deferral Plans, the Top–Hat employees had a right of election to accelerate deferred compensation payments subject to the consent of a committee for each of the Deferral Plans. Prior to October 29, 2001, each of the Deferral Plans did not have a standing committee; however, on such date, Kenneth Lay, Enron's then Chief Executive Officer, appointed Greg Whalley ("Whalley") as a committee of one for each of the Deferral Plans.

Between October 25, 2001 and November 30, 2001, approximately 206 Top–Hat employees made requests for accelerated deferred compensation payments under the Deferral Plans. Whalley approved 126 such requests, which resulted in Enron providing accelerated distributions (the "Accelerated Distributions") between October 30, 2001 and December 5, 2001 to 113 Top–Hat employees in the cash equivalent of $53,135,993.10. The remaining participants in the Deferral Plans requesting accelerated deferred compensation payments did not receive such payments.

By order dated September 23, 2003, the Court granted, among other things, the Employee Committee standing and authority to commence actions (the "Accelerated Distribution Avoidance Actions") on behalf of the Debtors' estates to avoid and to recover the Accelerated Distributions that were made to Top–Hat employees under the Deferral Plans.

Accordingly, on November 14, 2003, the Employee Committee filed a complaint (the "Complaint") on behalf of Enron, seeking to avoid and to recover pre-petition Accelerated Distributions made by Enron to twenty-nine defendants in November 2001, that is, Harpreet S. Arora, John C. Baxter ("Baxter," deceased) (Carol Baxter serves as Executrix of the estate of Baxter (the "Executrix")), L. Diane Bazelides ("D. Bazelides"), Philip J. Bazelides ("P. Bazelides"), Timothy N. Belden, Brian F. Bierbach, Donald W. Black ("Black"),

Richard B. Buy ("Buy"), Michelle H. Cash ("Cash"), Wesley H. Colwell ("Colwell"), Mark A. Frevert ("Frevert"), Robert Scott Gahn ("Gahn"), Eric Gonzales ("Gonzales"), Claibourne L. Harris ("Harris"), Robert J. Hermann ("Hermann"), R. Davis Maxey ("Maxey"), Peggy B. Menchaca ("Menchaca"), Mark S. Muller ("Muller"), James Noles ("Noles"), Cindy K. Olson ("Olson"), Paul H. Racicot Jr. ("Racicot"), Marian E. Ragland ("Ragland"), Brian L. Redmond ("Redmond"), Jeanette M. Rub ("Rub"), James E. Schwieger, Colleen Sullivan–Shaklovitz ("Sullivan–Shaklovitz"), Michael J. Swerzbin, Mark E. Taylor ("Taylor"), and Ricky L. Waddell. (Compl., Adv.Proc. No. 03–92909(AJG)).[2] The Employee Committee served a summons and the Complaint via first class mail upon said defendants on November 18, 2003.

Pursuant to sections 544, 547, 548, and 550 of the Bankruptcy Code and sections 24.005 and 24.006 of chapter 24 (Uniform Fraudulent Transfer Act ("UFTA")) of the Texas Business and Commercial Code, the Employee Committee seeks in the Complaint to recover the pre-petition preferential and fraudulent transfers made to all such defendants. Also, pursuant to sections 549 and 550 of the Bankruptcy Code, the Employee Committee seeks in the Complaint to recover alleged post-petition Accelerated Distributions under the Deferral Plans made to three defendants in December 4, 2001 through December 5, 2001, that is, (1) Michael L. Brown ("Brown"), (2) Gay Mayeux ("Mayeux"), and (3) Stuart W. Staley ("Staley"). (Compl., Adv.Proc. No. 03–92909(AJG)).[3] Orders to turn over property of the estate, preference actions and fraudulent conveyance actions are all core proceedings pursuant to subsections (b)(2)(E), (F), and (H), respectively, of section 157 of title 28 of the United States Code. See 28 U.S.C. § 157(b)(2)(E), (F), and (H) ("Core proceedings include ... (E) orders to turn over property of the

---

**2.** On January 20, 2004, Enron filed three Notices of Dismissal, dismissing with prejudice the Accelerated Distribution Avoidance Actions against Top–Hat employee-defendants Hermann, Redmond, and Rub pursuant to settlement agreements. Likewise, on July 24, 2004, Enron filed another Notice of Dismissal, dismissing the Accelerated Distribution against Top–Hat employee-defendant Ragland pursuant to a settlement agreement.

**3.** In addition to the thirty-two defendants in the Complaint, the Employee Committee, acting on behalf of Enron, filed additional Accelerated Distribution Avoidance Actions against Top–Hat employees, where all such claims were for pre-petition Accelerated Distributions. On November 26, 2003, the Employee Committee filed such an action against Top–Hat employee John Nowlan ("Nowlan"), seeking to recover pre-petition preferential and fraudulent transfers in the form of an Accelerated Distribution made to him in November 2001. (Compl., Adv.Proc. No. 03–93518(AJG)). On March 16, 2004, a Stipulation of Dismissal was entered into dismissing with prejudice the action against Nowlan pursuant to a settlement and release agreement dated February 17, 2004.

Further, on February 27, 2004, the Employee Committee commenced Accelerated Distribution Avoidance Actions against eleven Top–Hat employees, that is, Phillip K. Allen (Compl., Adv.Proc. No. 04–02378(AJG)), Mark E. Haedicke (Compl., Adv.Proc. No. 04–02379(AJG)), Sheila A. Knudsen (Compl., Adv.Proc. No. 04–02382(AJG)), Douglas Leach (Compl., Adv.Proc. No. 04–02380(AJG)), Thomas A. Martin (Compl., Adv. Proc. No. 04–02383(AJG)), Michael W. McGowan (Compl., Adv.Proc. No. 04–02384(AJG)), Mary Kay Miller (Compl., Adv. Proc. No. 04–02385(AJG)), Scott M. Neal (Compl., Adv.Proc. No. 04–02386(AJG)), Scott Porter (Compl., Adv.Proc. No. 04–02387(AJG)), Stuart Rexrode (Compl., Adv. Proc. No. 04–02388(AJG)), and Amit Walia ("Walia") (Compl., Adv.Proc. No. 04–02389(AJG)). On April 2, 2004, a Notice of Dismissal was entered into dismissing with prejudice the action against Walia pursuant to a settlement agreement dated March 25, 2004.

estate; (F) proceedings to determine, avoid, or recover preferences; ... (H) proceedings to determine, avoid or recover fraudulent conveyances....").

Subsequently, certain defendants in the Accelerated Distribution Avoidance Actions filed motions requesting, among other things, (1) to transfer venue to another district pursuant to section 1412 of title 28 of the United States Code. In particular, on December 17, 2003, Noles, who resides in Alabama, moved for, among other things, a section 1412 transfer of venue to the United States District Court for the Northern District of Alabama. Black, Buy, Frevert, Gonzales, Maxey, Menchaca, Muller, Ragland, Sullivan–Shaklovitz, and Taylor, all who reside in Texas[4] except for Taylor who resides in New York, filed a motion on December 31, 2003 (the "December 31, 2003 Motion"), each demanding a jury trial pursuant to rule 38 of the Federal Rules of Civil Procedure (each rule entitled the "Rule"), made applicable herein pursuant to rule 9015 of the Federal Rules of Bankruptcy Procedure (each rule entitled the "Bankruptcy Rule"), and all moving for a section 1412 transfer of venue to the Houston District Court. On January 8, 2004, (1) Cash, who resides in Bellaire, Texas, filed a joinder to the December 31, 2003 Motion requesting for the same relief, and (2) Brown and Racicot moved for, among other things, a section 1412 transfer of venue to the same district and, while not making a demand for a jury trial, noted that they do not consent to a jury trial by this Court pursuant to section 157(e) of title 28 of the United States Code.

Afterwards, by order dated January 15, 2004, the Court required that a Top–Hat employee, who is a defendant in any Accelerated Distribution Avoidance Action initiated by the Complaint and that intends to file a transfer of venue motion in such an action, must do so by January 30, 2004, as specified in a Notice Of Hearing And Filing Deadline For Motions To Transfer Venue Of Adversary Proceedings, dated January 16, 2004.

On January 29, 2004, (1) the Executrix of Baxter, who resides near Houston, Texas, filed a joinder to the December 31, 2003 Motion, that is, demanding a jury a trial, not consenting to a trial before this Court, and seeking a section 1412 transfer of venue to the Houston District Court, and (2) Gahn, who resides in Houston, Texas, moved for a section 1412 transfer of venue to the same district. On January 30, 2004, (1) D. Bazelides and P. Bazelides, who both reside in Houston, Texas, moved for section 1412 transfer of venue to the same district, (2) Harris, who resides in London, United Kingdom, using language nearly identical to the December 31, 2003 Motion without filing a joinder or adopting it, moved on the same grounds for a transfer of venue to the same district, (3) Olson, who resides in Spring, Texas, filed a demand for jury trial and adopted the December 31, 2003 Motion, and (4) Staley, who resides in Houston, Texas, filed a demand for jury trial and moved for, among other things, section 1412 transfer of venue to the same district (hereinafter any above section 1412 movants are collectively referred to as the "Movants").[5]

4. Specifically, Black, Buy, Gonzales, Maxey, Menchaca, Muller, and Ragland reside in Houston, Texas, Frever resides in Willis, Texas, and Sullivan–Shaklovitz resides in Pearland, Texas.

5. In particular, there are twenty (20) section 1412 "Movants," that is, Baxter, D. Bazelides, P. Bazelides, Black, Brown, Buy, Cash, Frevert, Gahn, Gonzales, Harris, Maxey, Menchaca, Muller, Noles, Olson, Racicot, Staley, Sullivan–Shaklovitz, and Taylor. Unless otherwise specified, Movants' contentions are

On February 19, 2004, the Employee Committee filed its opposition to, among other things, Movants' 1412 transfer of venue motions.

The Court held a hearing on the section 1412 transfer of venue motions on February 26, 2004. At such hearing, counsel for the Creditors' Committee supported the Employee Committee's opposition to Movants' section 1412 transfer venue motions.

## II. Discussion

### A. *Venue Statutory Framework*

■ "Section 1409 of title 28 of the United States Code governs venue of adversary proceedings arising under, arising or related to title 11 cases. Subject to [certain] exceptions ..., venue of adversary proceedings is always proper, in the first instance, in the district court where the title 11 case is pending." *Enron Corp. v. Dynegy Inc. (In re Enron Corp.),* No. 01–3626(AJG), 2002 WL 32153911, at *1 (Bankr.S.D.N.Y. Apr.12, 2002) (*"Dynegy"*) (citing 28 U.S.C. § 1409(a)). Despite "the propriety of instituting an adversary proceeding within this home district under section 1409(a)," a case or proceeding under title 11 *may* be transferred, on motion by a party and after a hearing, to another district pursuant section 1412 of title 28 of the United States Code. *Id.; see* FED. R.

BANKR.P. 7087 [6]; FED. R. BANKR.P. 1014(a)(1) [7]; *Official Comm. of Asbestos Claimants of G–I Holding, Inc. v. Heyman,* 306 B.R. 746, 749 (S.D.N.Y.2004) (" 'Where a party seeks to transfer venue for a core proceeding, the applicable statute is 28 U.S.C. § 1412.' " (quoting *Statutory Comm. of Unsecured Creditors on behalf of Iridium Operating LLC v. Motorola, Inc. (In re Iridium Operating LLC),* 285 B.R. 822, 835 (S.D.N.Y.2002))).

■ In particular, section 1412 provides that "[a] district court *may* transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice *or* for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added). "The statute is phrased in the disjunctive, therefore, '[e]ach requirement is discrete.... Thus, transferability pursuant to [section] 1412 is an either-or test, not a two-fold one.' " *Independent Stationers, Inc. v. Vaughn,* No. IP 99–0127 C M/S, 2000 WL 1449854, at *2 (S.D.Ind. Jan.3, 2000) (quoting and citing *In re Toxic Control Tech., Inc.,* 84 B.R. 140, 143 (Bankr. N.D.Ind.1988)). As noted by this Court in *In re Enron Corp.,* 284 B.R. 376 (Bankr. S.D.N.Y.2002), the phrases "interest of justice" and "for the convenience of the parties" "each give authority independent

---

considered made by each Movant since most Movants adopted each other's positions at the February 26, 2004 hearing and/or asserted similar contentions within their respective pleadings. Colwell, by his attorney, argued in support of the motions to transfer venue at a February 26, 2004 hearing, but did not file a separate motion to transfer venue or a joinder. (*See* Debtors' Counsel 3/30/04 Let., Ex. A).

6. Bankruptcy Rule 7087 provides as follows: On a motion and after a hearing, the court *may* transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412, except as provided in Rule 7019(2).

FED. R. BANKR.P. 7087 (emphasis added).

7. Bankruptcy Rule 1014(a)(1) provides as follows:

(a) Dismissal and transfer of cases.
(1) *Cases filed in proper district.* If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case *may* be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.
FED. R. BANKR.P. 1014(a)(1) (emphasis added).

of the other." *Id.* at 386 (citing *In re Portjeff Dev. Corp.*, 118 B.R. 184, 193 (Bankr.E.D.N.Y.1990)).

■ "Bankruptcy judges in this district are authorized to exercise the district court's power to transfer a case or proceeding under [section] 1412 by virtue [sections 157(a) and 1334(b) of title 28 of the United States Code] and the 'Standing Order of Referral of Cases to Bankruptcy Judges' of the United States District Court, dated July 10, 1984 (Ward, Acting C.J.)." *Enron,* 2002 WL 32153911, at *1 (citing *Lipshie v. AM Cable TV Indus., Inc. (In re Geauga Trenching Corp.),* 110 B.R. 638, 653 (Bankr.E.D.N.Y.1990)). "A motion to transfer venue is a core matter as it concerns the administration of the bankruptcy estate." *In re Enron Corp.,* 274 B.R. 327, 342 (Bankr.S.D.N.Y.2002).

■ "The power to transfer a case [or proceeding] should be exercised cautiously." *Toxic Control Tech.,* 84 B.R. at 143; *see Enron,* 274 B.R. at 342 ("Transferring venue of a bankruptcy case is not to be taken lightly.") (citing, in turn, *Commonwealth of Puerto Rico v. Commonwealth Oil Ref. Co. (In re Commonwealth Oil Ref. Co.),* 596 F.2d 1239, 1241 (5th Cir.1979) ("*CORCO* ") ("the court should exercise its power to transfer cautiously"); *In re Pa-*

vilion Place Assocs., 88 B.R. 32, 35 (Bankr.S.D.N.Y.1988) ("Transfer is a cumbersome disruption of the Chapter 11 process.")). Whether or not to grant a section 1412 motion to transfer venue of a case or proceeding under title 11 lies within the sound discretion[8] of a bankruptcy court based on an "individualized, case-by-case analysis of convenience and fairness" factors. *Gulf States Exploration Co. v. Manville Forest Prod. Corp. (In re Manville Forest Prod. Corp.),* 896 F.2d 1384, 1391 (2d Cir.1990) (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting, in turn, *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964))). "[A] bankruptcy court's decision denying or transferring venue will only be reversed if the court's decision constitutes an abuse of discretion." *Enron,* 274 B.R. at 343.

■ In exercising its discretion whether to grant a motion to transfer an adversary proceeding under title 11, the Court weighed the following section 1412 "interests of justice" and "convenience of the parties" factors in *Dynegy:*

Under the heading of the interests of justice, courts have considered, in addition to the location of the pending bankruptcy:

that "[p]ursuant to 28 U.S.C. § 1412, the Court *must* grant relief if it established that a transfer of venue would be proper if it is in (1) the interest of justice or (2) the convenience of the parties," *see Enron,* 274 B.R. at 343 and *Enron,* 284 B.R. at 387 (emphasis added), use of the word "must" although not impacting the determination in either of those cases was incorrect and inconsistent with the conclusion reached as to the standard to be applied and any of the relevant case law—in that section 1412's "language is permissive, not mandatory." *Independent Stationers, Inc. v. Vaughn,* No. IP 99–0127 C M/S, 2000 WL 1449854, at *2 (S.D.Ind. Jan.3, 2000) (citing *Kotlicky v. Belford,* 64 B.R. 679, 681 (N.D.Ill. 1986)).

---

**8.** A bankruptcy court's discretionary authority pursuant to section 1412 stems from its permissive language that provides that a district *"may"* transfer a case or proceeding. 28 U.S.C. § 1412 (emphasis added). In other words, section 1412 " 'merely says that a ... court *'may'* transfer a case to another district; it does not say it must transfer the case [or proceeding]....' " *In re Lazaro,* 128 B.R. 168, 172 (Bankr.W.D.Tex.1991) (quoting *In re Boeckman,* 54 B.R. 110, 111 (Bankr.D.S.D. 1985) (emphasis added)). Accordingly, while this Court stated in *In re Enron Corp.,* 274 B.R. 327 (Bankr.S.D.N.Y.2002) and in *In re Enron Corp.,* 284 B.R. 376 (Bankr.S.D.N.Y. 2002) in the section of each decision that discussed the Court's discretionary authority

1) whether transfer would promote the economic and efficient administration of the bankruptcy estate;

2) whether the interests of judicial econ-omy would be served by the transfer;

3) whether the parties would be able to receive a fair trial in each of the possible venues;

4) whether either forum has an interest in having the controversy decided within its borders;

5) whether the enforceability of any judgment would be affected by the transfer; and

6) whether the plaintiff's original choice of forum should be disturbed.

Under the heading of the convenience of parties[,] courts have considered:

7) the location of the plaintiff and the defendant;

8) the ease of access to the necessary proof;

9) the convenience of the witnesses and the parties and their relative physical and financial condition;

10) the availability of the subpoena pow-er for unwilling witnesses; and

11) the expense of obtaining unwilling witnesses.

*Dynegy*, 2002 WL 32153911, at *3–4 (quoting *TIG Ins. Co. v. Smolker*, 264 B.R. 661, 668 (Bankr.C.D.Cal.2001) (citing *A.B. Real Estate, Inc. v. Bruno's, Inc. (In re Bruno's, Inc.)*, 227 B.R. 311, 324–25 (Bankr.

N.D.Ala.1998))). Further, the Court noted that "[o]n a motion for change of venue, the burden is on the movant to show by a preponderance of the evidence that transfer of venue is warranted." [9] *Dynegy*, 2002 WL 32153911, at *3 (citing *Manville*, 896 F.2d at 1390).

 The Court will first discuss the "interests of justice" factors and subsequently the "convenience of the parties" factors. However, before applying the facts to the law, the Court reiterates the following general observation in *Dynegy*, which distinguishes the Court's venue decision in Enron's main bankruptcy case from venue concerns of an adversary proceeding:

[U]nlike the appropriate venue for Enrons chapter 11 cases, venue for adversary proceedings can involve parties and issues that are discrete and readily identifiable. Thus, insofar as the Courts January ruling retaining venue of Enrons bankruptcy cases was based on the premise that Enrons disparate assets and creditors justified retaining these cases in New York for the purpose of facilitating Enrons financial reorganization, these considerations are not relevant in disputes with identifiable parties and issues. Accordingly, it is appropriate to acknowledge that interests more parochial than centralizing the worldwide financial reorganization of Enrons underlying cases are involved in Dyne-

**9.** While in *Dynegy* the Court concluded that movant "Dynegy ha[d] met its burden by clear and convincing evidence" for transferring venue of the adversary proceeding therein, *Dynegy*, 2002 WL 32153911, at *9, such conclusion was not intended to infer that "clear and convincing evidence" is the appropriate burden of proof under section 1412 of title 28 of the United States Code. Rather, it was stated in the context that even if the higher burden of "clear and convincing evi-

dence" under the transfer of venue section 1404 of title 28 of the United States Code were applicable because of case law applying section 1404 in the bankruptcy context, the movant not only met the lower burden of "preponderance of the evidence" under section 1412, but also met the higher burden of "clear and convincing evidence" under section 1404. *See Dynegy*, 2002 WL 32153911, at *2–3, *9.

gys motion to transfer venue of this adversary proceeding.

*Dynegy*, 2002 WL 32153911, at *4.

### B. Interests Of Justice Test

#### 1. Factor 1 (Whether Transfer Would Promote The Economic And Efficient Administration Of The Bankruptcy Estate) And Factor 2 (Whether The Interests Of Judicial Economy Would Be Served By The Transfer)

■ As applied in *Dynegy*, the Court will weigh factors 1 and 2 "collectively because the economic administration of these bankruptcy estates is necessarily tied to concerns of judicial economy." *Id.* With respect to factor 1, the Court emphasizes, as noted in *In re Enron Corp.*, 274 B.R. 327 (Bankr.S.D.N.Y.2002), albeit within the context of reviewing "convenience of the parties" factors for a section 1412 transfer of venue motion of Enron's main bankruptcy case, that "[t]he factor given the most weight is the promotion of the economic and efficient administration of the estate." *Enron*, 274 B.R. at 343 (citing *CORCO*, 596 F.2d at 1247 ("[T]he most important consideration is whether the requested transfer would promote the economic and efficient administration of justice.")); *see Independent Stationers*, 2000 WL 1449854, at *3 ("Undeniably, the most important factor is whether the transfer would promote the economic and efficient administration of the estate.").

An initial consideration raised by Movants is the so-called "learning curve" issue. *See Dynegy*, 2002 WL 32153911, at *7 (noting that "the 'learning curve' issue [was] recognized as important by *Manville*"). Some Movants argue, among other things, that judicial efficiency would best be served by transferring venue pursuant to section 1412 to the Houston District Court because such court already has extraordinary familiarity with the various disputes involving former Enron employees. They further note that this Court has previously coordinated overlapping matters in this case with Judge Harmon in the Houston District Court. Other Movants assert that the Employee Committee has filed preference and fraudulent transfer actions against former Enron employees in the Houston Bankruptcy Court, that is, the Bonus Avoidance Actions, and thus they argue that such court is already high on the learning curve as to how bankruptcy and employee matters are related.

The Employee Committee counters that the subject matter of the Bonus Avoidance Actions pending in Houston are wholly distinct from that of the instant adversary proceedings. Specifically, the Employee Committee asserts that the Bonus Avoidance Actions concern recovery of certain allegedly fraudulent or otherwise improper pre-petition Bonuses paid to select Enron employees pursuant to the Enron Corp. Bonus Plan; however, the instant proceedings concern Accelerated Distributions allegedly made under the Deferral Plans.

Further, the Employee Committee argues that during the course of adjudicating Enron's bankruptcy case, this Court has considered some of the legal and factual issues to be litigated in these proceedings. First, the Employee Committee contends this Court authorized the investigation by the Enron Examiner of the underlying Accelerated Distributions, which were made pursuant to the Deferral Plans administered by Enron, and the Enron Examiner's report concluded that the recipients of such payments were liable to the estate. Second, the Employee Committee asserts that this Court heard oral argument on, and granted, Enron's contested motion to (1) authorize the Employee Committee to prosecute the instant adversary proceedings on behalf of Enron, and

(2) approve the procedure for the compromise and settlement of claims related to the preference payments, that is, the Accelerated Distributions, made pursuant to the Deferral Plans. Third, the Employee Committee claims that a number of Movants have asserted affirmative defenses based upon the Master Agreement (the "Master Agreement") between certain of the Debtors and UBS AG. The Employee Committee asserts since the Court is intimately familiar with the Master Agreement and the complex transactions contemplated thereunder and because the Court issued an order approving the Master Agreement, the Court has a significant learning curve in addressing the merits of any affirmative defenses based upon the Master Agreement.

The Accelerated Distribution Avoidance Actions, with the exception of the insolvency issue, involve different facts and legal issues from proceedings currently pending before any court in the Southern District of Texas. Moreover, during the pendency of these adversary proceedings, the Court has developed familiarity with the Accelerated Distribution Avoidance Actions and various related issues that may be raised in support of, or in opposition to, the relief sought by these actions. While the Houston District Court has gained familiarity with various disputes involving former Enron employees in the Bonus Avoidance Actions, such does not support that Houston District Court has familiarity with the progress of and issues raised in the Accelerated Distribution Avoidance Actions. Therefore, the Court finds that Movants

have failed to show that the "learning curve" factor weighs in favor of transferring venue to Houston.

Many Movants further assert that the latest statistics (as of the time of those Movants' submissions) available from the United States Courts' website show that filings in the Southern District of New York are approximately ten percent higher per judge than filings in the Southern District of Texas. Movants contend that because of this additional per judge caseload in the Southern District of New York, time to trial in Houston District Court would be shorter and, thus, timeliness favors a transfer to such venue. The Employee Committee did not respond to this contention.

The Court finds that Movants have failed to show how such greater per judge caseload within this district would impact the timely disposition of the instant adversary proceedings. Specifically, the higher per judge caseload in the Southern District of New York is not indicative of whether this Court will be able to address the Accelerated Distribution Avoidance Actions in a timely manner.

More pertinent to the analysis of judicial efficiency and economy regarding these actions is the insolvency issue concerning Enron. Certain Movants assert that whether Enron was insolvent at the time it made the Accelerated Distributions will be an element that the Employee Committee will need to establish to pursue its preference actions herein under Bankruptcy Code section 547(b).[10]

---

**10.** The elements of a Bankruptcy Code section 547(b) preference action herein are as follows:

 (1) there was a transfer of interest of Enron in property to or for the benefit of a Movant;

 (2) for or on account of an antecedent debt owed by Enron before such transfer was made;

 (3) made while Enron was *insolvent;*

 (4) made on or within 90 days before the date of the filing of the petition; and

 (5) *that enables the Movant to receive more that the Movant would have received if*

The Employee Committee agrees with Movants that Enron's insolvency will be a key issue herein. In particular, the Employee Committee claims that this Court will eventually acquire significant knowledge on Enron's insolvency through solvency experts of the parties in interest to the numerous avoidance actions filed on behalf of Enron, and currently pending, in New York. In addition, the Employee Committee contends that if Enron as plaintiff is required to litigate the Accelerated Distribution Avoidance Actions in the Southern District of Texas, a solvency ruling by a court in that district will have a collateral estoppel effect on Enron's insolvency issue in its pending avoidance actions in New York. Conversely, the Employee Committee asserts that if the Houston District Court rules on Enron's insolvency in the Bonus Avoidance Actions where the Employee Committee, not Enron, is the plaintiff, it will not have a collateral estoppel effect in New York since Enron is not a party to such proceeding.

Although this Court has considered the arguments regarding any collateral estoppel effect issue, such consideration is not dispositive. The Court's focus is promoting judicial efficiency and economy enunciated under factors 1 and 2.

Currently, there are approximately over 1,000 avoidance actions pending before this Court with the Debtors as plaintiffs, where the issue of Enron's insolvency has been raised in the great majority of the avoidance actions. The Court recognized the significance of the Debtors' insolvency issues to these avoidance actions when, in an effort to coordinate the avoidance action discovery, in hearings on the Avoidance Action Discovery Procedures Order (the "Discovery Order"), which was entered on November 18, 2004, the Court scheduled a hearing for February 18, 2005 to resolve certain outstanding issues regarding insolvency discovery. Further, the Discovery Order provided, among other things, that a separate common issue depository be created for the issues of Enron's insolvency and cash management system. Also, pursuant to such order, discussions are being conducted among the parties to the numerous avoidance actions to address discovery of the Debtors' insolvency issues. There is a strong possibility that many of the parties to the numerous avoidance actions will seek under Rule 42(a) [11] to consolidate Enron's insolvency issues into one proceeding. Therefore, the Court finds that the likely benefits of the consolidation efforts would be served best by retaining venue in New York.

Movants further argue that the "home court" presumption has no application to the Accelerated Distribution Avoidance Actions, that is, "a presumption that the bankruptcy court in which the debtor's case is pending, the home court, is the proper venue for adjudicating all proceedings in the case ...." *Irwin v. Beloit Corp. (In re Harnischfeger Indus., Inc.),* 246 B.R. 421, 439 (2000). Specifically, Movants assert the "home court" presump-

---

(a) the case had been filed under chapter 7, (b) the transfer had not been made, and (such Movant received payment of such debt).

*See* 11 U.S.C. § 547(b) (emphasis added).

**11.** Rule 42(a) of the Federal Rules of Civil Procedure provides as follows:
 (a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a).

tion is inapplicable because, among other things, (1) the Court cannot conduct a jury trial since not all Movants consent to such a trial as required by section 157(e) of title 28 of the United States Code and thus there can be no judicial efficiency in maintaining the actions in New York, and (2) the Employee Committee has already commenced litigation against hundreds of former employees, some of the defendants in this proceeding, in the Southern District of Texas and, accordingly, the "home court" presumption is no longer served once the party to be protected voluntarily commences similar litigation in another jurisdiction.

Movants claim that following the adoption of section 157(e), courts that have considered the effect of a jury demand on the "home court" presumption have determined that the presumption no longer exists. In support of this contention, Movants cite (1) *Breeden v. Aegis Consumer Funding Group Inc. (In re Bennett Funding Group, Inc.)*, 259 B.R. 243 (N.D.N.Y. 2001), noting that "when ... the Court has already withdrawn the reference from the bankruptcy court, the policy behind centralizing core matters in the bankruptcy court is not applicable," *id.* at 256, and (2) *Luciano v. Maggio*, 139 B.R. 572 (E.D.N.Y.1992), noting that the presence of a right to a jury trial obviates reason for case to be before the "home court," *see id.* at 577.

In response, the Employee Committee asserts that, contrary to Movants' assertion that the "home court" presumption no longer exists when a party has demanded a jury trial, courts continue to apply the "home court" presumption following the adoption of section 157(e) of title 28 of the United States Code. The Employee Committee further asserts that Movants are misguided in quoting the *Bennett Funding Group* holding because while Movants ask

this Court to presume that a district court is on the verge of withdrawing, *in toto,* the reference of this matter, (1) not a single defendant herein has filed a motion to withdraw the reference, and (2) the policy behind centralizing core matters before a bankruptcy court referenced in such case still remains applicable herein. Moreover, the Employee Committee asserts that it is not certain that such a motion would be granted given the strong presumption against the withdrawal of core bankruptcy proceedings. The Employee Committee, therefore, argues that any motion to withdraw the reference would be at best premature because, at a minimum, this Court can oversee discovery, motion practice, and other pre-trial matters.

With respect to Movants' reliance on the *Luciano* holding for the proposition that the presence of a right to a jury trial obviates the reason for these adversary proceedings to before the "home court," the Employee Committee points out that the court observations in that case regarding the right to a jury trial concerned the "might have been brought" clause of section 1404(a) of title 28 of the United States Code in a motion to transfer venue of a non-core, tort suit. The Employee Committee thereby asserts that *Luciano* has no bearing upon the venue motions herein because such motions concern transfer of a core proceeding and are governed by section 1412 of title 28 of the United States Code, which does not contain the "might have been brought" clause of section 1404(a).

■ Irrespective of the Court not being able to conduct a jury trial because of lack of consent pursuant to section 157(e) of title 28 of the United States Code, the Court finds that its familiarity with the issues in the Accelerated Distribution Avoidance Actions will still allow for significant judicial efficiencies by presiding over

pretrial matters for such actions until such time as the proceedings are trial ready. Regarding motions to withdraw the reference in the Enron cases, aside from when the district court found that mandatory withdrawal was warranted in *Enron Power Mktg., Inc. v. California Power Exch. Corp. (In re Enron Corp.)*, 2004 WL 2711101 (S.D.N.Y. Nov.23, 2004), the court has denied without prejudice such motions where the cases are still at the preliminary stage, that is, discovery and dispositive motions practice have not yet been undertaken.[12] Additionally, the Court finds that (1) Movants improperly rely on *Luciano* for it does not support their above-noted contention, and (2) contrary to Movants' assertion that following the adoption of

section 157(e) that the "home court" presumption no longer exists, the presumption continues to maintain its vitality.

Accordingly, based on the foregoing, the Court finds that Movants have not established under either factors 1 or 2 that venue should be transferred to the Houston District Court.

### 2. Factor 3 (Whether The Parties Would Be Able To Receive A Fair Trial In Each Of The Possible Venues)

Some Movants contend that while it must be presumed that either the Southern District of New York or Southern District of Texas will provide a fair trial, if a jury is impaneled, it would seem to be

---

**12.** In *Official Comm. of Unsecured Creditors of Enron Corp. v. Lay (In re Enron Corp.)*, 295 B.R. 21 (S.D.N.Y.2003), the district court opined as follows with respect to a similar permissive withdrawal of reference contention:

> [D]efendants maintain that because they have requested a jury trial—and because, as they aver, they would never consent to a jury trial in the Bankruptcy Court—it is inevitable that this action will ultimately be adjudicated in a district court, and therefore, the case should simply be withdrawn from the Bankruptcy Court now.
>
> The case law is clear that "a district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial."
>
> . . . .
>
> Courts have also recognized that it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial. Furthermore, the district courts ability to withdraw the reference at any point should alleviate defendants concern that they would not obtain a jury trial in Bankruptcy Court.
>
> In *In re Enron Corp.*, the court refused to withdraw even a non-core proceeding "unless and until a jury trial is necessary."

> The court reached that conclusion after finding that (1) the proceeding was in a preliminary stage; (2) dispositive motions might resolve the matter; (3) there was potentially considerable discovery requiring court oversight; and (4) the bankruptcy judge would be presiding over numerous similar actions. Here too, the Adversary Proceeding is in its preliminary stage; the Official Committee has indicated that dispositive motions are likely to be filed; discovery will be significant, particularly on the issue of Enron's financial transaction insolvency pursuant to 11 U.S.C. 548(a)(1)(B); and there may be numerous other avoidance actions before Bankruptcy Judge Gonzalez that will be decided on many of the same factual and legal grounds.
>
> Because all of these factors militate against withdrawing the reference, the fact that defendants might ultimately request a jury trial in federal district court is not dispositive.

*Id.* at 27–28 (citations omitted); *see also Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y.1992) ("[T]he appropriateness of removal of the case to a district court for trial by jury, on Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial ready." (quoting *In re Adelphi Institute, Inc.*, 112 B.R. 534, 538 (S.D.N.Y.1990))).

more appropriate to have the jury composed of Texas citizens since most Movants are Texans. The Employee Committee did not directly respond to this Texas jury pool contention.

The Court finds Movants' jury pool contention to be without merit. Since Movants otherwise do not dispute that they would be able to receive a fair trial in this district or that judgment rendered in this district would be enforceable under the Full Faith and Credit Clause of the United States Constitution, the Court finds that the "fair trial" factor weighs in favor of retaining venue in New York. *See Dynegy,* 2002 WL 32153911, at *5 (applying similar rationale).

### 3. *Factor 4 (Whether Either Forum Has An Interest In Having The Controversy Decided Within Its Borders)*

As to factor 4, some Movants assert that five of the thirteen counts in the Complaint relate to claims under Texas' Uniform Fraudulent Transfer Act (the "UFTA"). Movants argue that a court in the Southern District of Texas is better equipped to hear the Complaint's claims under UFTA because (1) such a court is more familiar with the laws of Texas, (2) such Texas fraudulent conveyance claims have already been raised in other Enron-related litigation in the district, and (3) the Texas fraudulent conveyance claims do not have the same standard of proof as a fraudulent transfer action under Bankruptcy Code section 548.

The Employee Committee responds that this Court also is familiar with the general principles of fraudulent conveyance law applicable to the Texas fraudulent conveyance statute, especially given that it was adopted under the UFTA, which is based upon the Bankruptcy Code.

In reviewing factor 4 in *Dynegy,* this Court noted "there is a state interest in deciding local controversies within its borders by those familiar with its laws." *Dynegy,* 2002 WL 32153911, at *7. While Texas law will likely govern the interpretation of issues related to UFTA claims under the Complaint, this Court also noted in *Dynegy* that "federal courts routinely apply the law of other jurisdictions" and, therefore, the Court does not afford much weight to Movants' UFTA contention under factor 4. *See id.*

Movant Gahn raises another concern that appears to fall under factor 4. Gahn asserts that the forum selection clause in his employment agreement (the "Employment Agreement") with Enron (that is, with Enron Energy Services Operations, Inc.) mandates that the instant adversary proceeding against him be transferred to Houston. In particular, Gahn contends, albeit without clarity, that the instant proceeding arises from an alleged distribution to him under the Enron 1994 Stock Plan. Gahn asserts that his relationship to the Enron 1994 Stock Plan itself arose from the two-year Employment Agreement he executed May 14, 2001. Under the terms of the Employment Agreement, Enron selected Houston as the venue for suit, and so Enron should not now be allowed to seek another venue. In his motion to transfer venue, Gahn provided the following provisions regarding his May 14, 2001 Employment Agreement:

> 1.3 Benefits. Employee shall be allowed to participate, on the same basis generally as other employees employed in the same or similar positions, in all general employee benefit plans
>
> . . . .
>
> 4.5 Venue/Jurisdictions. This Agreement shall be governed by Texas law. Any litigation that may be brought by either party involving . . . the rights . . .

of this Agreement, shall be brought exclusively in the State or federal courts sitting in Houston, Harris County, Texas.

The grants shall be made pursuant to the Enron Corp. 1994 Stock Plan....

The Employee Committee responds that the venue clause in Gahn's Employment Agreement, which relates solely to claims arising under such agreement, is inapplicable to this adversary proceeding. Specifically, the Employee Committee contends that Enron is not suing under, and does not attempt to enforce, any provision of Gahn's Employment Agreement. The Employee Committee asserts that section 4.5 of the Employment Agreement provides that any litigation "involving *the enforcement* of this Agreement or the rights duties, or obligations of this Agreement," shall be brought in Houston. However, the Employee Committee contends that it is telling that Gahn chooses to omit the word "enforcement" from the language he quotes in his motion to transfer venue. The Employee Committee argues that Enron has not sought to "enforce" the Employment Agreement in these adversary proceedings but rather to avoid transfers. Further, the Employee Committee claims that neither the Employment Agreement nor any other employment contract is even mentioned in the Complaint.

Upon review of the Complaint and the Employment Agreement, the Court agrees with the Employee Committee and finds that the forum selection clause under such agreement is inapplicable to the adversary proceeding against Gahn. The Complaint does not seek to enforce any aspect of the Employment Agreement; rather, the Complaint seeks to recover the Accelerated Distribution made to Gahn on a prepetition basis, that is, on November 16, 2001.

The Court thereby finds that both Movants' contentions regarding UFTA and Gahn's contentions regarding the forum selection clause in his Employment Agreement have failed to demonstrate under factor 4 that venue should be transferred to the Houston District Court.

### 4. *Factor 5 (Whether The Enforceability Of Any Judgment Would Be Affected By The Transfer)*

During the February 26, 2004 hearing on Movants' section 1412 motions, some Movants noted that these adversary proceedings are, in part, preference actions and thus argued, presumably under factor 5, that the best Enron will get at the end of the day is a judgment that it will have to return to Texas to domesticate such judgment, that is, initiate court proceeding in Texas and begin collection procedures. Movants, therefore, argue that it only makes sense for Accelerated Distribution Avoidance Actions to be tried in Southern District of Texas against Texas Movants.

While the Employee Committee did not directly reply to Movants' contention regarding Texas being a better suited for final enforcement of the preference action, the Court finds that the basis of Movants argument under factor 5 to be of little significance and thus does not support a change of venue to the Houston District Court.

### 5. *Factor 6 (Whether The Plaintiff's Original Choice Of Forum Should Be Disturbed)*

Citing *Renaissance Cosmetics, Inc. v. Development Specialists Inc.*, 277 B.R. 5, 18 (S.D.N.Y.2002), Movants contend that when a plaintiff files a suit outside of its principal place of business, no deference should be given to the plaintiff's choice of forum. Movants assert that this Court held in its decision on whether to transfer

venue of Enron's main bankruptcy case, *see Enron,* 274 B.R. at 341, that Enron could not have commenced its bankruptcy case in the Southern District of New York but for location of one of its subsidiaries in the district. Movants assert, however, the instant adversary proceedings are brought solely by Enron and, therefore, Movants appear to contend that Enron's choice of forum should be disturbed.

The Employee Committee contends that *Renaissance Cosmetics* court held that a court "must give greater deference to a plaintiff's choice of a non-home forum where that choice was motivated by legitimate reasons, including plaintiff's convenience." *Renaissance Cosmetics,* 277 B.R. at 18. Citing *In re Enron,* 274 B.R. 327, 345–51 (Bankr.S.D.N.Y.2002), the Employee Committee further asserts that is Court has already found, in great detail, many legitimate reasons for administering Enron's case in the Southern District of New York and, therefore, the situation in which the *Renaissance Cosmetics* court indicated a plaintiff's choice of forum should be given "diminishing deference," where "motivated by tactical advantage such as forum shopping," is not present in this case. *Renaissance Cosmetics,* 277 B.R. at 18.

 "A debtor's choice of forum is entitled to great weight if venue is proper." *See Enron,* 274 B.R. at 342. "[I]f the movant has not proved by the preponderance of the evidence that the preceding [interests of justice] factors weigh in favor of the transfer, then plaintiff's choice of forum remains the proper venue." *Harnischfeger Indus.,* 246 B.R. at 442; *see Enron,* 274 B.R. at 342 ("Where a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed."). Thus, irrespective of Movants' *Renaissance Cosmetics* contention, no change of venue is appropriate in these proceedings because Movants have not convinced the Court that the other "interests of justice" factors warrant that these proceedings should be transferred to the Houston District Court. *See id.* (applying a similar analysis).

## C. Convenience Of The Parties Test

### 1. Factor 7 (The Location Of The Plaintiff And The Defendant)

Movants contend that factor 7 weighs heavily in favor of transfer to Houston because (1) Enron was headquartered and held substantially all of its assets in Houston, and (2) most Movants, except for Noles in Alabama and Taylor in New York, reside near, or are residents of, Houston. Movants further assert that the only party residing in New York is the Employee Committee and its counsel, which has no first hand knowledge of any of the facts pertaining to the Complaint. The Employee Committee did not directly reply to factor 7.

Since most Movants are located in or near Houston and Enron is headquartered in Houston, the Court finds that Movants have demonstrated that factor 7 favors transfer of venue to the Houston District Court. (Although Movants focus on the Employee Committee and counsel residing in New York, the Court emphasizes, as noted earlier, that Enron, not the Employee Committee, is the plaintiff herein and, thus, only its location is relevant under factor 7).

### 2. Factor 8 (The Ease Of Access To The Necessary Proof)

Movants argue that factor 8 also weighs in favor of transfer to Houston because substantially all of the relevant documents that relate these adversary proceedings

are located in Houston. The Employee Committee counters, among other things, that generally the physical location of relevant documents is given little weight unless such documents are too voluminous transport, which is not the case herein for they can readily be made available in electronic format or copied and shipped to this district.

The Court finds that Movants have failed to show that venue should be transferred to the Houston District Court under factor 8. As noted in *Dynegy*, "the availability of electronic versions of documents ... make[s] their physical location less relevant. There is no indication that documents made available in Houston could not be used for litigation in New York." *Dynegy*, 2002 WL 32153911, at *8. Therefore, the Court finds that factor 8 is at best neutral and thereby weighs in favor of retaining venue here. *See id.* (applying similar finding).

### 3. *Factors 9 (The Convenience Of The Witnesses And The Parties And Their Relative Physical And Financial Condition), 10 (The Availability Of The Subpoena Power For Unwilling Witnesses), And 11 (The Expense Of Obtaining Unwilling Witnesses)*

Next, Movants argue that, unlike what the Court faced when it rejected an attempt to move the entire consolidated bankruptcy case to Texas in January 2002, there are discreet considerations present in the Accelerated Distribution Avoidance Actions that overwhelmingly favor transfer to the Houston District Court under factors 9, 10, and 11. Specifically, Movants contend, among other things, that (1) the non-party witnesses who have first hand knowledge of the transfers that are subject of the Complaint are located in Houston, (2) there will be far less problems in obtaining live testimony of the unwilling Houston witnesses through subpoena power of the Houston District Court, than if the proceeding remains in New York, (3) since presentation of such unwilling witness testimony in New York will require that a defendant subpoena witnesses for deposition examination in Texas and that a defendant subsequently read the deposition transcript of the witness' testimony into evidence during a trial in the Southern District of New York, this procedure will create a hardship for a defendant in mounting his or her defense because the trier of fact will not be able to see and hear the witness whose credibility it must judge, (4) if Texas witnesses assert privileges, Texas law, not New York law, will determine the existence and scope of any privilege the witness claims, (5) should Texas witnesses file any motions to quash or for protective order, a court in Texas must rule on such motions, and (6) expenses of (a) obtaining the testimony of party and non-party witnesses, (b) travel to a court, and (c) production of relevant documents, would be far less if this proceeding is tried in Houston.

The Employee Committee contends, among other things, that any inconvenience to the parties and non-party witnesses would be minimal given modern transportation, communications and information technology. Moreover, the Employee Committee asserts that neither the parties nor non-party witness are likely to be inconvenienced during the discovery process, since (1) the parties could, with the Court's approval, appear via telephone or video conference, thereby minimizing further any inconvenience, and (2) the depositions of any non-party Houston witnesses will, in most instances, be held in Houston. The Employee Committee further maintains that minimal live testimony will be needed, which can be presented by existing Enron employees, and the Accel-

erated Distribution Avoidance Actions are primarily a legal arguments proceeding, not really a question of convenience for the parties. The Employee Committee also argues this Court's learning curve in these adversary proceedings, and the judicial and administrative efficiency to be gained by adjudicating these proceedings in this district, easily outweigh the potential for minor inconveniences related to out-of-state witnesses and evidence. Furthermore, the Employee Committee contends that although Movants aver that certain unnamed witnesses are located in Houston, such a generalized assertion is not sufficient for Movants to meet their burden under the "convenience of the parties" factor.

The Court acknowledges that Movants will be inconvenienced in having to litigate the adversary proceedings in New York verses in Houston. Further, while Movants will likely have added financial burdens in having to litigate their actions in this district, the Court finds that any such additional costs will be offset by the efficiencies obtained under the Discovery Order and efforts to facilitate the insolvency issues in the district. Expert testimony and other evidence will likely be presented in a consolidated manner and although it is unclear as to how such costs will be shared, it would nonetheless be less expensive for Movants than if they had the full burden of presenting such expert testimony and responding to Enron's expert(s) testimony on the insolvency issues.

Further, the Accelerated Distribution Avoidance Actions, other than the insol-

vency issue, are not witness-driven, fact-intensive proceedings. Rather, such actions primarily concern legal issues such as whether Accelerated Distributions made to defendants meet the legal elements of preference and fraudulent transfer claims. Thus, for instance, it is not likely that there will be a factual dispute as to how many times a party made a request for Accelerated Distributions under the Deferral Plan; rather, the issue will likely be the relevance of such facts. Indeed, one of Movants' counsel recognized during the February 26, 2004 hearings that his client did not allegedly steal funds from Enron, but unfortunately "got caught in a timing statute." (2/26/04 Tr. at 142). Further, for example, the issue raised by the Complaint's UFTA causes of action regarding Enron's receipt of reasonably equivalent value in exchange for the Accelerated Distributions might appear at first glance to be a factual issue; however, under the circumstances as presented in these proceedings, it appears that there would be little in the way of factual disputes; instead, the issue of reasonable equivalent value would likely be a legal issue.

With respect to non-party witnesses, the Court finds that Movants failed (1) to specifically identify, aside from two non-party witnesses in Houston mentioned during the February 26, 2004 hearing, the numerous alleged key witnesses to be called in these proceedings, and (2) to provide a general statement of what their testimony would cover.[13] In particular, Movant Muller only testified during the hearing about (1) former Enron human

---

13. A bankruptcy court, albeit in the context of section 1404(a) of title 28 of the United States Code, noted in *Breeden v. Aegis Consumer Funding Group Inc. (In re Bennett Funding Group, Inc.)*, 259 B.R. 243 (N.D.N.Y.2001), as follows:

[W]hen a party seeks to transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. As a result, if the moving party makes vague generalizations about the witnesses it intends to call, it will not have met its burden and its motion will be denied. *Id.* at 249 (quotation marks and citations omitted).

resources employee Mary Joyce, who processed Movants' claims for Accelerated Distributions, and (2) former Enron acting president Whalley, who approved of the Accelerated Distributions, where both reside in Houston. Testimony from these non-party witnesses regarding processing of the Accelerated Distribution applications and approval of such distributions will not necessarily be in dispute.

Because (1) Movants would likely benefit from possible consolidation of the Debtors' insolvency issues, (2) the Accelerated Avoidance Distribution Avoidance Actions mainly concern legal issues, and (3) Movants failed to identify, beyond two, the alleged key non-party witnesses to be called and clarify the testimony that would be covered by such witnesses, the Court finds that factors 9, 10, and 11 collectively do not support a change of venue to the Houston District Court.

### III. Conclusion

Accordingly, having considered the "interests of justice" and "convenience of the parties" factors, the Court finds that Movants have failed to meet their burden of showing by a preponderance of the evidence that transfer of the Accelerated Distribution Avoidance Actions from New York to Houston is warranted.[14] Therefore, for the reasons set forth herein, it is hereby:

ORDERED, that Movants' motion to transfer venue pursuant to section 1412 of title 28 of the United States Code is denied.

**14.** As to Noles's section 1412 motion, the Court finds that judicial efficiency and economy concerns under *Dynegy* factors 1 and 2 discussed herein would similarly outweigh any other factors that might favor granting transfer to the Northern District of Alabama.

Noles's counsel represented if his section 1412 motion is denied for the Northern District of Alabama, he would join other Movants in their transfer request to the Houston District Court. (2/26/04 Tr. at 182).